**HARIRI LAW GROUP**
RAMIN R. HARIRI  (SBN: 251625)
12526 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel: (619) 363-2889
Fax: (619) 810-0791
Email: ramin@haririlaw.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

KAREN MONZON, ANDREA ZARATTINI, individually and on behalf of all employees similarly situated, Plaintiffs

Plaintiffs,

vs.

COUNTY OF SAN DIEGO; DOES 1-10, inclusive

Defendants.

CASE NO.  3:23-CV-0445-JES-WVG

PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT FOR:

1. FAILURE TO PAY WAGES OWED UNDER THE FAIR LABOR STANDARDS ACT - 29 U.S.C. §§ 206, 207(a), 216 (B)
2. FAILURE TO PAY MINIMUM WAGE -  Cal. Labor Code §§ 1194, 1197

DEMAND FOR JURY TRIAL


HON. JAMES E. SIMMONS, JR.
DEPT. COURTROOM 4B

-1-
PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES

## INTRODUCTION

1.     COMES NOW, Plaintiffs, KAREN MONZON and ANDREA ZARATTINI on behalf of themselves and all others similarly situated (hereinafter sometimes collectively referred to as "Plaintiffs"), hereby files this Class Action Complaint against Defendants COUNTY OF SAN DIEGO and Does 1-50. Plaintiffs complain and allege as follows:

2.     Plaintiffs bring this action on behalf of themselves and all current and former employees within San Diego County, California, who, at any time from three (3) years prior to the filing of this lawsuit through its resolution, are or were employed in the Construction Engineering Division of the San Diego County Department of Public Works by Defendants COUNTY OF SAN DIEGO ("COUNTY") and DOES 1 through 10 (all defendants being collectively referred to herein as "Defendants").   Plaintiffs allege that Defendants, and each of them, violated various provisions of the California Labor Code, relevant orders of the Industrial Welfare Commission (IWC), and also bring a collective action for Defendants' violations of the provisions of the Fair Labor Standards Act ("FLSA"), including 29 U.S.C. §§ 206 and 207, and seek redress for these violations.

## PARTIES

3.     Plaintiffs KAREN MONZON was at all relevant times an employee of Defendant COUNTY OF SAN DIEGO, and an individual residing in the State of California.

4.     Plaintiff ANDREA ZARATTINI (collectively, with Plaintiff MONZON, "Plaintiffs") was at all relevant times an employee of Defendant COUNTY OF SAN DIEGO and an individual residing in the State of California.

5.     Plaintiffs allege on information and belief that Defendant COUNTY OF SAN DIEGO,  ("COUNTY") was at all relevant times a municipality, duly chartered and existing in the County of San Diego, California.

6.     Plaintiffs are currently unaware of the true names and capacities of the

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES

defendants sued in this action by the fictitious names DOES 1 through 50, inclusive, and therefore sue those defendants by those fictitious names. Plaintiffs will amend this complaint to allege the true names and capacities of such fictitiously named defendants when they are ascertained.

7.     Plaintiffs are informed and believe and on that basis allege that each defendant sued in this action, including each defendant sued by the fictitious names DOES 1 through 50, inclusive, is responsible in some manner for the occurrences, controversies and damages alleged below.    At all times herein mentioned, Defendants, and each of them, and DOES 1-50 were the agents, servants, employees, permissive users, joint venturers, successors in interest, assigns and subsidiaries, each of the other, and at all times pertinent hereto were acting within the course and scope of their authority as such agents, servants, employees, permissive users, joint venturers, successors in interest, assigns and subsidiaries.  (Defendants COUNTY, and DOES 1 through 50, inclusive, are hereinafter collectively referred to as "Defendants".)

## JURISDICTION AND VENUE

8.     Venue is proper given that the wrongful acts complained of herein occurred in the County of San Diego, State of California, and Defendants were doing business and had offices in the State of California.

9.     Venue is proper in San Diego County pursuant to Code of Civil Procedure section 395(a) and 395.5 because liability arose in San Diego County, at least some of the transactions that are the subject matter of this Complaint occurred therein, and Defendants transact substantial business in San Diego County.

## GOVERNMENT CLAIMS ACT

10.     On March 30, 2023, Plaintiffs served Notice of Claim to Defendant COUNTY to the Office of County Counsel.  (Exhibit A to FAC).

11.     On April 17, 2023, Defendant COUNTY responded to the Notice of Claim and stated that they required additional information.

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES

12.     On April 21, 2023, Plaintiffs sent additional information to Defendant COUNTY identifying dates, times, when the violations occurred and estimated amounts.   Included in this addendum correspondence was a comprehensive report authored by Plaintiff Monzon, detailing the nature of Plaintiffs' allegations.  Attached to the report was two tables with dates, hours worked, overtime hours worked, and unpaid hours for both Plaintiffs.  (Exhibit B[1] to FAC).

13.     On July 26, 2023, a notice of rejection of the claim was sent to Plaintiffs by Defendant COUNTY (Exhibit C to FAC).

## GENERAL ALLEGATIONS

14.     Plaintiff MONZON was hired by Defendant COUNTY on or about May 2019.  Plaintiff was hired as an Assistant Civil Engineer for the Construction Engineering Division of the San Diego County Department of Public Works.

15.     Plaintiff ZARATTINI was hired by Defendant COUNTY on or about April 2003.  Plaintiff was hired as an Engineering Technician for the Construction Engineering Division of the San Diego County Department of Public Works.

16.     Plaintiffs are classified by Defendant COUNTY as a non-exempt employees for the purposes of overtime compensation.

17.     Defendant COUNTY employs a variety of engineers in the Department of Public Works, all of which are classified into different categories, for example: Assistant Engineer; Civil Engineer; Engineering Technician.

18.     During the time period relevant to this Complaint, Plaintiffs have been employed by Defendant COUNTY as non-exempt engineers within the State of California, and consistently worked at Defendant's behest without being paid all wages due.  Plaintiffs and the other similarly situated Class members were employed by Defendant COUNTY and assigned responsibilities as employees performing tasks relating to engineering.  Upon information and belief, Plaintiffs and their co-workers were employed by Defendant COUNTY and (1) shared similar job duties and

---

[1] Redacted for purposes of filing with FAC.

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES

responsibilities; and (2) endured similar violations at the hands of Defendant COUNTY as the other Class members who served in similar and related positions.

19.     Plaintiffs allege that they and the Class members were either not paid by Defendant COUNTY for all hours worked or were not paid at the appropriate minimum, regular and overtime rates.

20.     Plaintiffs and Class members allege that approval for overtime was regularly denied by supervisors, but that Plaintiffs and the Class were still required by Defendant COUNTY to complete tasks that required work in excess of eight (8) in a given work day or over forty (40) in a given work week.

21.     Defendant COUNTY required Plaintiffs and the Class to work off the clock and failed to record accurate time worked by these employees, including by not paying them for all hours worked, failed to pay them at the appropriate overtime rates for all hours worked, and provided Plaintiffs and the Class members with inaccurate wage statements that prevented Plaintiffs and the Class from learning of these unlawful pay practices.

22.     Some of the wage violations committed towards Plaintiff Monzon, for example, occurred in the work week of April 26, 2021.  Plaintiff Monzon was required to work overtime and was not compensated for the overtime worked.  On April 27, 2021 and April 30, 2021, Plaintiff worked in excess of eight hours per day, and in excess of 40 hours that week.  Plaintiff was not fully compensated for all hours worked.  Plaintiff Monzon's hours that particular week were provided in documentation to Defendant COUNTY and were supported by emails sent by Plaintiff Monzon evidencing hours worked "off the clock."

23.     Some of the wage violations committed towards Plaintiff Monzon also occurred in the week of May 2, 2022.  Plaintiff Monzon was required to work overtime and was not compensated for the overtime worked.  On May 2nd, 3rd, 4th, and 5th, Plaintiff worked in excess of eight hours per day, and in excess of 40 hours that week. Plaintiff Monzon was required to work overtime and was not compensated

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES

for all hours worked. Plaintiff's hours that particular week were provided in documentation to Defendant COUNTY and were supported by emails sent by Plaintiff evidencing hours worked "off the clock."

24.     Plaintiff Monzon's regular schedule consisted of 40-hour work weeks with a 7:30 a.m. to 4:00 p.m. daily schedule. She alleges that during the relevant time period, she regularly was required to work after 4:00 p.m. without compensation, often multiple times in one workweek, and that emails sent by Plaintiff to Defendant COUNTY reflect these hours worked. In addition, Plaintiff's timesheets reflect these hours. Plaintiff was often in the field finishing tasks that had to be done that day when she worked hours she was not paid for. For example, Plaintiff would have to work uncompensated hours uploading photographs of the job site, sending time-sensitive emails about projects, or dealing with IT issues.

25.     Plaintiff alleges that she and other similarly situated individuals employees by Defendant COUNTY had to complete the following tasks during uncompensated/overtime hours: miscellaneous paperwork related to the construction projects they are assigned to (change orders, requests for information, pay estimates and Q-sheets, downloading/uploading documents to box, resolving claim issues, resolving design issues, completing daily inspection reports, and weekly statement of working days); miscellaneous paperwork related to administrative work (teleworking forms/timesheets, safety meeting presentations, misc. training); and covering work for coworker that is out of the office.

26.     Plaintiff Monzon alleges that almost weekly violations took place between May 2020 and June 2022, at which point the violations were brought to the attention of Defendant COUNTY. During this time period, Plaintiff alleges that she was not compensated for approximately 140 hours of time worked. This is an estimate by Plaintiff for this time period based on information available to Plaintiff, and Plaintiff alleges this is not the full extent of the damages incurred.

27.     Some of the wage violations committed towards to Plaintiff Zarattini occurred in the work week of June 28, 2021.  Plaintiff Zarattini was required to work overtime and was not compensated for the overtime worked.  On July 1st and 2nd, Plaintiff worked in excess of eight hours per day, and in excess of 40 hours that week. Plaintiff Zarattini was required to work overtime and was not compensated for all hours worked.  Plaintiff's hours that particular week were provided in documentation to Defendant COUNTY and were supported by emails sent by Plaintiff Monzon evidencing hours worked "off the clock."

28.     Some of the wage violations committed towards Plaintiff Zarattini also occurred in the week of December 13, 2021.  Plaintiff Zarattini was required to work overtime and was not compensated for the overtime worked.  On December 14, 2021, Plaintiff worked in excess of eight hours per day, and in excess of 40 hours that week. Plaintiff Zarattini was required to work overtime and was not compensated for all hours worked.  Plaintiff's hours that particular week were provided in documentation to Defendant COUNTY and were supported by emails sent by Plaintiff Zarattini at the time evidencing hours worked "off the clock."

29.     Plaintiff Zarattini's regular schedule consisted of 40-hour work weeks with a 7:00 a.m. to 3:30 p.m. daily schedule.  She alleges that during the relevant time period, she regularly was required to work after 3:30 p.m. without compensation, often multiple times in one workweek.  Plaintiff's timesheets reflect these hours. Plaintiff was either in the office or in the field finishing tasks that had to be done that day when she worked hours she was not paid for.  Plaintiff alleges that during the course of her employment during the relevant time period, she would often receive text messages and phone calls from residents, consultants and contractors after working hours or early morning before the start of the project, and Plaintiff was required to respond to all of these despite not being compensated for these hours. This is in addition to the uncompensated tasks described *supra* in Paragraph 25.

30.     Plaintiff Zarattini alleges that violations took place between July 2020 and June 2022, at which point the violations were brought to the attention of Defendant COUNTY.  During this time period, Plaintiff alleges that she was not compensated for approximately 80 hours of time worked.  This is an estimate by Plaintiff for this time period based on information available to Plaintiff, and Plaintiff alleges this is not the full extent of the damages incurred.

31.     Some of the information reflecting dates of unpaid hours worked that was ascertainable by Plaintiffs was previously provided to Defendant COUNTY, and is included in the notice attached to Amended Complaint as Exhibit B.

32.     By reason of this uniform exemption practice applicable to Plaintiffs and other similarly situated employees who form the Class who performed non-exempt tasks required by Defendant COUNTY, Defendant committed acts of unfair competition by engaging in a uniform company-wide policy, practice and procedure which failed to analyze the amount of non-exempt tasks performed by Plaintiffs and other similarly situated employees and thereafter failed to correctly determine whether these individuals were being paid all wages owed.

33.     Defendant COUNTY's wage policies and practices also prevented Defendant from recording or otherwise knowing the actual hours worked by Plaintiffs and the Class, and in turn Defendant did not maintain accurate records from which they can calculate overtime incurred. To whatever extent the hours worked by Plaintiffs and the Class members, or the actual hours paid for work completed, were greater than eight (8) in a given work day or over forty (40) in a given work week.

34.     Defendant COUNTY knowingly and willfully failed to adequately compensate Plaintiffs and the Class members for all wages earned (including premium wages such as overtime wages, double-overtime wages) under the California Labor Code ("Labor Code") and Fair Labor Standards Act ("FLSA") thereby enjoying a significant competitive edge over Defendants' competitors.

## CLASS AND COLLECTIVE ALLEGATIONS

35.    Plaintiffs bring this action on behalf of themselves and all others similarly situated, as a class action pursuant to Code of Civil Procedure § 382.  The Class that Plaintiffs seek to represent is the following: At any time from three (3) years prior to the filing of this action through the date of the Court's granting of class certification in this matter, all persons who are or have been employed by Defendant COUNTY in the Department of Public Works who were classified as non-exempt employees and yet were not paid all wages earned (the "Class").

36.    This action has been brought and may be maintained as a class action under Code of Civil Procedure § 382 because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

37.    Plaintiffs also bring this action pursuant to 29 U.S.C. § 216 on behalf of a collective defined as: All current and former non-exempt employees who were employed by Defendant COUNTY in the Department of Public Works who were classified as non-exempt employees and yet were not paid all wages earned at any time during the period of three (3) years prior to the filing of this lawsuit and ending on a date as determined by the Court (the "FLSA Class").  Pursuant to 29 U.S.C. § 216(b), to become members of this FLSA collective action, the putative class members of the FLSA Class are required to opt in to this action by filing their consents with the Court.

38.    *Numerosity*, The potential members of the Class as defined herein are numerous and therefore joinder of all of the members of the Class is impracticable, especially when employee turnover during the Class period is taken into account. Defendants' employment records applicable to the Class are required before an accurate number can be determined, but Plaintiffs are informed and believe that the potential members of the Class are significant.

39.    *Commonality*, There are questions of law and fact that are common to Plaintiffs and the Class that predominate over any questions affecting only individual

-9-

members of the potential Class, including but not limited to the following:

a.    The claims of the representative Plaintiffs are typical of the claims of each member of the Class.  Plaintiffs, like all other members of the Class, was classified as non-exempt, but was denied 1) all wages earned, 2) overtime compensation, 3) accurate wage statements.  Plaintiffs sustained economic injury as a result of Defendant COUNTY's employment practices.  Plaintiffs and Class Members were and are similarly or identically harmed by the same unlawful, deceptive, unfair and pervasive pattern of misconduct engaged in by Defendant by deceptively denying all Class Members wages earned, and unfairly failing to pay overtime to employees.

40.    *Typicality*, Plaintiffs' claims are typical of the Class. Plaintiffs and other Class Members sustained damages due to Defendant COUNTY's failure to pay all wages earned, overtime compensation, and to provide accurate wage statements.

41.    *Adequacy of Representation*, Plaintiffs are members of the Class and will fairly and adequately represent and protect the interests of the Class.  Plaintiffs' interests do not conflict with the interests of the Class.  Plaintiffs' counsel is competent and experienced in litigating wage and hour class actions and will devote sufficient time and resources to the case and adequately represent the interests of the Class.

42.    *Superiority,* a class action superior to other available methods for the fair and efficient adjudication of this litigation because class treatment will obviate the need for unduly and unnecessary duplicative litigation that is likely to result in the absence of certification of this action pursuant to Code of Civil Procedure § 382. In the context of wage litigation because as a practical matter a substantial number of individual members of the Class will avoid asserting their legal rights out of fear of retaliation by Defendant COUNTY, which may adversely affect an individual's job with Defendant or with a subsequent employer, the class action is the only means to assert their claims through a representative.

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES

# FIRST CAUSE OF ACTION

## UNPAID WAGES AND OVERTIME UNDER FEDERAL LABOR STANDARDS ACT

### [29 U.S.C. §§ 206,207(a)]

### (AGAINST ALL DEFENDANTS)

43.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this First Amended Complaint.

44.    Plaintiffs bring this action on behalf of themselves and other members of the proposed FLSA Class as a collective action pursuant to 29 U.S.C. § 216(b), under the FLSA, 29 U.S.C. § 201 et seq.

45.    At all relevant times, Defendant COUNTY is and continues to be, an "employer" engaged in interstate "commerce" within the meaning of the FLSA, 29 U.S.C. § 203.  At all relevant times, Defendant has employed all members of the proposed FLSA Class as "employees" within the meaning of the FLSA, 29 U.S.C. § 203.

46.    During the applicable statutory period, Defendant COUNTY caused Plaintiffs and the FLSA Class to routinely work more than forty (40) hours in a workweek without proper overtime compensation.  Examples of these violations are discussed *supra* and included as Exhibit D, which encompasses documents previously provided to Defendant prior to the filing of this Amended Complaint.

47.    Therefore, in violation of FLSA, Defendant COUNTY failed to properly compensate Plaintiffs and members of the proposed FLSA Class for all hours worked in excess of forty (40) hours in a workweek.

48.    At all relevant times, Defendant COUNTY willfully, regularly and repeatedly failed to make, keep and preserve accurate records required by FLSA with respect to Plaintiffs and the other FLSA Class members, including records sufficient to accurately determine the wages and hours of employment pertaining to Plaintiffs and the other FLSA Class members.

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES

49.    Plaintiffs and the FLSA Class are not exempt from the overtime requirements of FLSA under 29 U.S.C. § 213, and Defendant COUNTY's regular, repeated, and knowing failure to compensate Plaintiffs and the FLSA Class at the required overtime rate constitutes willful violation of the FLSA.

50.    Pursuant to 29 U.S.C. §§ 206, 207(a) and 216(b), Plaintiffs and the other members of the FLSA Class are entitled to damages in the amount of their respective unpaid wages, including unpaid overtime compensation, and liquidated damages as provided by the FLSA, attorney's fees and costs of action, injunctive relief requiring Defendant COUNTY to cease and desist from their violations of FLSA described herein and to comply with FLSA, and such other legal and equitable relief as the Court deems just and proper.

## SECOND CAUSE OF ACTION
## FAILURE TO PAY MINIMUM WAGE
### [Cal. Labor Code  §§ 1194, 1197]
### (AGAINST ALL DEFENDANTS)

51.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

52.    Labor Code § 1197 states the California requirement that employees must be paid at least the minimum wage fixed by the Commission, and any payment of less than the minimum wage is unlawful. Similarly, Labor Code § 1194 entitles "any employee receiving less than the legal minimum wage...to recover in a civil action the unpaid balance of the full amount of this minimum wage." IWC Wage Order 8-2001 also obligates employers to pay each employee minimum wages for all hours worked. These minimum wage standards apply to each hour employees worked for which they were not paid.

53.    Defendant COUNTY required Plaintiffs and the Class to regularly perform work-off-the-clock for which they did not receive any compensation. Specifically, as part of their uniform employment policies.

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES

54. In committing these violations of the California Labor Code, Defendant inaccurately recorded or calculated the correct time worked and consequently underpaid the actual time worked by Plaintiffs and other members of the Class. Defendant acted in an illegal attempt to avoid the payment of all earned wages, and other benefits in violation of the California Labor Code, the Industrial Welfare Commission requirements and other applicable laws and regulations. As a result of these violations, Defendant also failed to timely pay all wages earned in accordance with California Labor Code § 1194.

55. In California, employees must be paid at least the then applicable state minimum wage for all hours worked under IWC Wage Order MW-2014. Additionally, pursuant to Labor Code § 204, other applicable laws and regulations, and public policy, an employer must timely pay its employees twice monthly for all hours worked. Defendant failed to do so.

56. Labor Code § 1194 provides, in part, that any employee receiving less than the legal minimum wage is entitled to recover in a civil action the unpaid balance of the minimum wage, including interest thereon, reasonable attorney's fees, and costs of suit.

57. Labor Code § 1194.2 allows an employee to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon for any action under Labor Code § 1194. Where an employee, such as Plaintiffs and other members of the Class, is not paid for all hours worked under Labor Code § 1194, the employee may recover minimum wages for the time associated with the overtime for which they received no compensation.

58. Plaintiffs and the Class suffered and continue to suffer losses related to the use and enjoyment of compensation due and owing to them as a direct result of Defendant's unlawful acts and Labor Code violations in an amount to be shown according to proof at trial and within the jurisdictional limitations of this Court.

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES

# **PRAYER**

**WHEREFORE**, Plaintiffs pray for judgment against Defendant, and each of them, as follows:

FIRST CAUSE OF ACTION

1. A declaratory judgment that Defendant's violations of FLSA were willful;

2. Authorization to issue notice pursuant to 29 U.S.C. § 216(b) at the earliest possible time to all current and former employees of Defendant at any time during the two years immediately preceding the filing of this action, informing them that this action has been filed, of the nature of the action, and of their right to opt into this lawsuit if they worked in excess of forty hours in a week during the past three years, but were not paid overtime as required by FLSA;

3. An award to Plaintiffs and other similarly situated persons who opt into this action of damages in the amount of unpaid overtime compensation to be proven at trial, pursuant to FLSA;

4. An award to Plaintiffs and other similarly situated persons who opt into this action of liquidated damages in an amount equal to the overtime compensation shown to be owed to them;

5. An award to Plaintiffs and other similarly situated persons who opt into the action of reasonable attorney's fees and costs, pursuant to 29 U.S.C. § 216(b);

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES

SECOND CAUSE OF ACTION

1. An award to Plaintiffs and the other members of the Class in the amount of their unpaid minimum wages owed, plus interest and/or liquidated damages during the class period, as well as attorney's fees under Labor Code § 1194;

ALL CAUSES OF ACTION

1. Reasonably attorney's fees, if applicable;

2. Interest accrued on damages and penalties, including prejudgment interest, according to proof; and

3. Any and all damages available under the law.

4. For such other and further relief as the Court deems just and equitable.

Respectfully submitted,

Dated: September 12, 2023                    HARIRI LAW GROUP

By: _____
Ramin R. Hariri
Attorney for Plaintiffs

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES

# EXHIBIT A

# HARIRI | LAW GROUP

RAMIN R. HARIRI
ATTORNEY

OF COUNSEL:
TINA ARSHAKYAN
LOS ANGELES OFFICE

12526 HIGH BLUFF DR. STE. 300
SAN DIEGO, CA 92130
OFFICE: (619) 363-2889
FAX: (619) 810-0791
RAMIN@HARIRILAW.COM
WWW.HARIRILAW.COM

March 30, 2023

**SENT VIA CERTIFIED MAIL & PERSONAL SERVICE**
Office of County Counsel
Claims and Investigation Division
1600 Pacific Highway, Room 355
San Diego, CA 92101

## NOTICE OF CLAIM
## PURSUANT TO CALIFORNIA TORT CLAIMS ACT

RE: Karen Monzon - Employment with County of San Diego

To Whom It May Concern:

This firm represents Karen Monzon and other similarly situated individuals in relation to claims arising from her employment with the County of San Diego ("County").

Ms. Monzon is alleging that the County failed to compensate her and other employees in her department for all hours worked, resulting in a number of violations of state and federal law. Specifically, Ms. Monzon alleges that she was not properly paid for overtime hours that she was required to work. This claim is made on behalf of Ms. Monzon individually, and those all similarly situated employees of the County which, like Ms. Monzon, were not compensated for overtime hours worked in the past and those who continue to not be compensated for their overtime hours.

Ms. Monzon was originally hired by the County on or about May 2019 as an assistant civil engineer for the construction engineering division of the San Diego County Department of Public Works. By agreement between the County and the employees, Ms. Monzon is classified as a non-exempt employee for the purposes of overtime compensation.

On repeated occasions during the relevant statutory period, Ms. Monzon has not been compensated for overtime hours she has worked. Ms. Monzon is required by her

HARIRI LAW GROUP
ATTORNEYS AT LAW

PAGE 2 OF 2

supervisors with the County to complete certain tasks in a certain time frame, and even though the County has been advised that this often necessitates overtime hours, the County has refused to fully compensate Ms. Monzon for overtime worked. Therefore, the County has been fully aware of this matter for some time now and can therefore *expediate the investigative process* of this claim.

Because Ms. Monzon is required by the County to work "off the clock" she is unable to fully and accurately calculate the amount of damages owed. This occurred at a number of job sites throughout San Diego County, and the claim being made encompasses all worksites and job locations that Ms. Monzon has worked at during the relevant period.

The County's failure to compensate Ms. Monzon for all hours worked and for all overtime hours worked has caused Ms. Monzon and those similarly situated to suffer financial loss in an amount to be determined. Ms. Monzon has attempted to individually keep track of all overtime hours that she worked that she was not compensated for, but the nature of her work and the fact that the County would ultimate be the gatekeeper of this information means that Ms. Monzon cannot present a full accounting to the County at this time.

Ms. Monzon alleges violations of the Fair Labor Standards Act. Ms. Monzon alleges that her claims individually exceed $10,000.00, and that collectively, the total amount of unpaid wages to similarly situated employees thus also exceeds $10,000.00.

Ms. Monzon can be contacted through this law firm and the address and phone number marked on the letterhead of this correspondce. The County has all the necessary personal identifying information about Ms. Monzon and other similarly situated employees in County personnel and employment files.

Please feel free to contact my office with any questions regarding the above.

With kind regards,

Hariri Law Group

Ramin Hariri, Esq.
Attorney at Law

cc:    File
       *Courtesy Copy Sent to Office of County Counsel, County of San Diego*

# HARIRI | LAW GROUP

RAMIN R. HARIRI
ATTORNEY

OF COUNSEL:
TINA ARSHAKYAN
LOS ANGELES OFFICE

12526 HIGH BLUFF DR. STE. 300
SAN DIEGO, CA 92130
OFFICE: (619) 363-2899
FAX: (619) 810-0791
RAMIN@HARIRILAW.COM
WWW.HARIRILAW.COM

March 30, 2023

**SENT VIA CERTIFIED MAIL & PERSONAL SERVICE**
Office of County Counsel
Claims and Investigation Division
1600 Pacific Highway, Room 355
San Diego, CA 92101

## NOTICE OF CLAIM
## PURSUANT TO CALIFORNIA TORT CLAIMS ACT

RE: Andrea Zarattini - Employment with County of San Diego

To Whom It May Concern:

This firm represents Andrea Zarattini and other similarly situated individuals in relation to claims arising from her employment with the County of San Diego ("County").

Ms. Zarattini is alleging that the County failed to compensate her and other employees in her department for all hours worked, resulting in a number of violations of state and federal law. Specifically, Ms. Zarattini alleges that she was not properly paid for overtime hours that she was required to work. This claim is made on behalf of Ms. Zarattini individually, and those all similarly situated employees of the County which, like Ms. Zarattini, were not compensated for overtime hours worked in the past and those who continue to not be compensated for their overtime hours.

Ms. Zarattini is an employee in the construction engineering division of the San Diego County Department of Public Works. By agreement between the County and the employees, Ms. Zarattini is classified as a non-exempt employee for the purposes of overtime compensation.

On repeated occasions during the relevant statutory period, Ms. Zarattini has not been compensated for overtime hours she has worked. Ms. Zarattini is required by her supervisors with the County to complete certain tasks in a certain time frame, and even

HARIRI LAW GROUP
ATTORNEYS AT LAW

PAGE 2 OF 2

though the County has been advised that this often necessitates overtime hours, the County has refused to fully compensate Ms. Zarattini for overtime worked. Therefore, the County has been fully aware of this matter for some time now and can therefore *expediate the investigative process* of this claim.

Because Ms. Zarattini is required by the County to work "off the clock" she is unable to fully and accurately calculate the amount of damages owed. This occurred at a number of job sites throughout San Diego County, and the claim being made encompasses all worksites and job locations that Ms. Zarattini has worked at during the relevant period.

The County's failure to compensate Ms. Zarattini for all hours worked and for all overtime hours worked has caused Ms. Zarattini and those similarly situated to suffer financial loss in an amount to be determined. Ms. Zarattini has attempted to individually keep track of all overtime hours that she worked that she was not compensated for, but the nature of her work and the fact that the County would ultimate be the gatekeeper of this information means that Ms. Zarattini cannot present a full accounting to the County at this time.

Ms. Zarattini alleges violations of the Fair Labor Standards Act. Based on the information available to her at this time, Ms. Zarattini estimates that her total claim is less than $10,000.00, and may be approximately $6,000.00. Given the nature of the claim and the fact that the County refused to document the overtime worked, at this time, this number may not be accurate, and Ms. Zarattini cannot make a comprehensive demand without a review of documents in the custody and control of the County.

Ms. Zarattini can be contacted through this law firm and the address and phone number marked on the letterhead of this correspondence. The County has all the necessary personal identifying information about Ms. Zarattini and other similarly situated employees in County personnel and employment files.

Please feel free to contact my office with any questions regarding the above.

With kind regards,

Hariri Law Group

Ramin Hariri, Esq.
Attorney at Law

cc:    File
    *Courtesy Copy Sent to Office of County Counsel, County of San Diego*

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

7022 0410 0003 2525 7985

Certified Mail Fee  $4.15

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)  $
☐ Return Receipt (electronic)  $
☐ Certified Mail Restricted Delivery  $
☐ Adult Signature Required  $
☐ Adult Signature Restricted Delivery $

Postage  $0.63

Total Postage and Fees

Sent To _Office of County Counsel - Claims and Investigation Div._
Street and Apt. No., or PO Box No. _1600 Pacific Highway, Room 355_
City, State, ZIP+4® _San Diego, CA  92101_

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

7022 0410 0003 2525 7978

Certified Mail Fee  $4.15

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)  $
☐ Return Receipt (electronic)  $
☐ Certified Mail Restricted Delivery  $
☐ Adult Signature Required  $
☐ Adult Signature Restricted Delivery $

Postage  $0.63

Total Postage and Fees  $8.13

Sent To _Office of County Counsel - Claims & Investigation Dept_
Street and Apt. No., or PO Box No. _1600 Pacific Highway, Room 355_
City, State, ZIP+4® _San Diego, CA  92101_

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

**USPS Tracking**®

 **Track Packages Anytime, Anywhere**

Get the free Informed Delivery® feature to receive automated notifications on your packages

**Learn More**

**Tracking Number:**

# 70220410000325257978

 **Copy**     **Add to Informed Delivery**

## Latest Update

Your item was delivered to the front desk, reception area, or mail room at 4:52 pm on April 3, 2023 in SAN DIEGO, CA 92101.

**Get More Out of USPS Tracking:**

 **USPS Tracking Plus**®

● **Delivered**
**Delivered, Front Desk/Reception/Mail Room**
SAN DIEGO, CA 92101
April 3, 2023, 4:52 pm

**Redelivery Scheduled for Next Business Day**
SAN DIEGO, CA 92101
March 31, 2023, 2:35 pm

**Departed USPS Regional Facility**
SAN DIEGO CA DISTRIBUTION CENTER
March 31, 2023, 12:04 am

**Arrived at USPS Regional Facility**
SAN DIEGO CA DISTRIBUTION CENTER
March 30, 2023, 9:09 pm

**USPS in possession of item**
SAN DIEGO, CA 92199
March 30, 2023, 11:24 am

**Hide Tracking History**

 **USPS Tracking**®

**Tracking**

**Track Packages Anytime, Anywhere**

Get the free Informed Delivery® feature to receive automated notifications on your packages

**Learn More**

**Tracking Number:**

# 70220410000325257985

 **Copy**     **Add to Informed Delivery**

### Latest Update

Your item was delivered to the front desk, reception area, or mail room at 4:52 pm on April 3, 2023 in SAN DIEGO, CA 92101.

**Get More Out of USPS Tracking:**

**USPS Tracking Plus®**

**Delivered**

**Delivered, Front Desk/Reception/Mail Room**

SAN DIEGO, CA 92101
April 3, 2023, 4:52 pm

**Redelivery Scheduled for Next Business Day**

SAN DIEGO, CA 92101
March 31, 2023, 2:36 pm

**Departed USPS Regional Facility**

SAN DIEGO CA DISTRIBUTION CENTER
March 31, 2023, 12:17 am

**Arrived at USPS Regional Facility**

SAN DIEGO CA DISTRIBUTION CENTER
March 30, 2023, 9:13 pm

**USPS in possession of item**

SAN DIEGO, CA 92199
March 30, 2023, 11:26 am

**Hide Tracking History**

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address):

Ramin Hariri, 251625
Hariri Law Group
402 West Broadway, Floor 21
San Diego, CA 92101

ATTORNEY FOR (Name):

TELEPHONE NO.: 619-363-2889

FOR COURT USE ONLY

Ref. No. or File No.

Insert name of court, judicial district or branch court, if any:

Office of County Counsel, Claims and Investigation Division

,

PLAINTIFF:

Karen Monzon

DEFENDANT:

Office of County Counsel

| **PROOF OF SERVICE** | DATE: 03/30/2023 | TIME: 2:30PM | DEPT/DIV: | CASE NUMBER: N/A |
|---|---|---|---|---|

1. At the time of service I was a citizen of the United States, over 18 years of age and not a party to this action, and I served copies of:

Notice of Claim - Karen Monzon

2. Party Served: Office of County Counsel, Claims and Investigation Division

3. Person Served: **Party in item 2.**

   a. Left with: Cindy Isa - Clerk - Person In Charge Of Office

4. Date & Time of Delivery: 03/30/2023      1:47PM

5. Address, City and State: 1600 Pacific Hwy, Room 355
   San Diego, CA 92101

6. Manner of Service: By leaving the copies with or in the presence of Cindy Isa - Clerk , (business) a person at least 18 years of age apparently in charge of the office or usual place of business of the person served. I informed him/her of the general nature of the papers. I caused the copies to be mailed (if applicable). A declaration of mailing is attached.

Fee for Service: $ 190.50

Registered California process server.
County:  San Diego
Registration No.:  3625

Ryan Brandon Boudway
One Legal - P-000618-Sonoma
1400 North McDowell Blvd. Ste 300
Petaluma, CA 94954

415-491-0606

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct and that this declaration was executed on 04/05/2023 at Petaluma, California.

Signature: _Ryan Boudway_

Ryan Brandon Boudway

OL#: 20118103

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address): | | TELEPHONE NO.: | FOR COURT USE ONLY |
|---|---|---|---|
| Ramin Hariri, 251625<br>Hariri Law Group<br>402 West Broadway, Floor 21<br>San Diego, CA 92101 | | 619-363-2889 | |
| ATTORNEY FOR (Name): | Ref. No. or File No. | | |

Insert name of court, judicial district or branch court, if any:

Office of County Counsel, Claims and Investigation Division

,

| PLAINTIFF: |
|---|
| Karen Monzon |

| DEFENDANT: |
|---|
| Office of County Counsel |

| PROOF OF SERVICE BY MAIL | DATE:<br>03/30/2023 | TIME:<br>2:30PM | DEPT/DIV: | CASE NUMBER:<br>N/A |
|---|---|---|---|---|

I am a citizen of the United States, over the age of 18 and not a party to the within action. My business address is 1400 N. McDowell Blvd, Petaluma, CA 94954.

On 04/05/2023, after substituted service under section CCP 415.20(a) or 415.20(b) or FRCP 4(e)(2)(B) or FRCP 4(h)(1)(B) was made (if applicable), I mailed copies of the:

   Notice of Claim - Karen Monzon

to the person to be served at the place where the copies were left by placing a true copy thereof enclosed in a sealed envelope, with First Class postage thereon fully prepaid, in the United States Mail at Petaluma, California, addressed as follows:

   Office of County Counsel, Claims and Investigation Division

   1600 Pacific Hwy, Room 355

   San Diego, CA 92101

I am readily familiar with the firm's practice for collection and processing of documents for mailing.  Under that practice, it would be deposited within the United States Postal Service, on that same day, with postage thereon fully prepaid, in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

   Fee for Service: $ 190.50

Alyssa Gonzales-Hayes

One Legal - P-000618-Sonoma

1400 North McDowell Blvd, Ste 300

Petaluma, CA 94954

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct and that this declaration was executed on 04/05/2023 at Petaluma, California.

Alyssa Gonzales-Hayes

OL#:    20118103

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address): | | TELEPHONE NO.: | FOR COURT USE ONLY |
|---|---|---|---|
| Ramin Hariri, 251625<br>Hariri Law Group<br>402 West Broadway, Floor 21<br>San Diego, CA 92101 | | 619-363-2889 | |
| ATTORNEY FOR (Name): | Ref. No. or File No. | | |

Insert name of court, judicial district or branch court, if any:

Office of County Counsel, Claims and Investigation Division

,

PLAINTIFF:

Andrea Zarattini

DEFENDANT:

Office of County Counsel

| **PROOF OF SERVICE** | DATE:<br>03/30/2023 | TIME:<br>1:30PM | DEPT/DIV: | CASE NUMBER:<br>N/A |
|---|---|---|---|---|

1. At the time of service I was a citizen of the United States, over 18 years of age and not a party to this action, and I served copies of:

Notice of Claim - Andrea Zarattini

2. Party Served:    Office of County Counsel, Claims and Investigation Division

3. Person Served:    **Party in item 2.**

   a. Left with:    Cindy Isa - Clerk - Person In Charge Of Office

4. Date & Time of Delivery:    03/30/2023        1:47PM

5. Address, City and State:    1600 Pacific Hwy, Room 355
   San Diego, CA 92101

6. Manner of Service:    By leaving the copies with or in the presence of Cindy Isa - Clerk , (business) a person at least 18 years of age apparently in charge of the office or usual place of business of the person served. I informed him/her of the general nature of the papers. I caused the copies to be mailed (if applicable). A declaration of mailing is attached.

Fee for Service: $ 190.50

Registered California process server.
County:  San Diego
Registration No.:  3625

Ryan Brandon Boudway
One Legal - P-000618-Sonoma
1400 North McDowell Blvd. Ste 300
Petaluma, CA 94954

415-491-0606

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct and that this declaration was executed on 04/05/2023 at Petaluma, California.

Signature: _____
                    Ryan Brandon Boudway

OL#:  20118095

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address): | | TELEPHONE NO.: | FOR COURT USE ONLY |
|---|---|---|---|
| Ramin Hariri, 251625<br>Hariri Law Group<br>402 West Broadway, Floor 21<br>San Diego, CA 92101 | | 619-363-2889 | |
| ATTORNEY FOR (Name): | Ref. No. or File No. | | |

| Insert name of court, judicial district or branch court, if any: |
|---|
| Office of County Counsel, Claims and Investigation Division<br><br>, |

| PLAINTIFF: |
|---|
| Andrea Zarattini |

| DEFENDANT: |
|---|
| Office of County Counsel |

| PROOF OF SERVICE BY MAIL | DATE:<br>03/30/2023 | TIME:<br>1:30PM | DEPT/DIV: | CASE NUMBER:<br>N/A |
|---|---|---|---|---|

I am a citizen of the United States, over the age of 18 and not a party to the within action. My business address is 1400 N. McDowell Blvd, Petaluma, CA 94954.

On 04/05/2023, after substituted service under section CCP 415.20(a) or 415.20(b) or FRCP 4(e)(2)(B) or FRCP 4(h)(1)(B) was made (if applicable), I mailed copies of the:

  Notice of Claim - Andrea Zarattini

to the person to be served at the place where the copies were left by placing a true copy thereof enclosed in a sealed envelope, with First Class postage thereon fully prepaid, in the United States Mail at Petaluma, California, addressed as follows:

  Office of County Counsel, Claims and Investigation Division


  1600 Pacific Hwy, Room 355

  San Diego, CA 92101

I am readily familiar with the firm's practice for collection and processing of documents for mailing.  Under that practice, it would be deposited within the United States Postal Service, on that same day, with postage thereon fully prepaid, in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.


  Fee for Service: $ 190.50

| Alyssa Gonzales-Hayes<br>One Legal - P-000618-Sonoma<br>1400 North McDowell Blvd, Ste 300<br>Petaluma, CA 94954 | I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct and that this declaration was executed on 04/05/2023 at Petaluma, California.<br><br>Alyssa Gonzales-Hayes |
|---|---|

OL#:    20118095

EXHIBIT B

# HARIRI | LAW GROUP

RAMIN R. HARIRI
ATTORNEY

OF COUNSEL:
TINA ARSHAKYAN
*LOS ANGELES OFFICE*

12526 HIGH BLUFF DR. STE. 300
SAN DIEGO, CA 92130
OFFICE: (619) 363-2889
FAX: (619) 810-0791
RAMIN@HARIRILAW.COM
WWW.HARIRILAW.COM

April 21, 2023

**SENT CERTIFIED MAIL**
Office of County Counsel
Claims and Investigation Division
1600 Pacific Highway, Room 355
San Diego, CA 92101

## ADDENDUM TO MARCH 30, 2023 NOTICE OF CLAIM PURSUANT TO CALIFORNIA TORT CLAIMS ACT

RE: Karen Monzon & Andrea Zarattini - Employment with County of San Diego

To Whom It May Concern:

This firm represents Karen Monzon & Andrea Zarattini and other similarly situated individuals in relation to claims arising from her employment with the County of San Diego ("County"). On March 30, 2023, this office served a Notice of Claim on behalf of both these individuals.

In correspondence dated April 17, 2023, the County deemed the claim rejected for what they alleged was a lack of specific information relating to the date of occurrence of the violations at issue.

It is my clients' position that the County has been on notice of the alleged violations since July 2022, when they were provided with a comprehensive report of the relevant facts, including a timeline of events. Nonetheless, the information attached 1.) the original Labor Compliance Report that was provided to the County and attached Tables; and 2.) Notice of Claim is being provided to the County once again as an addendum to the original Notice(s) of Claim.

The County has been engaged in dialogue with Ms. Monzon and others over a period of months regarding the violations at issue, so there is no doubt that the County is

HARIRI LAW GROUP
ATTORNEYS AT LAW

PAGE 2 OF 2

on notice of potential claims. Any argument otherwise would be transparently made in bad faith. Additionally, my clients allege that the violations may be ongoing, but that all information related to hours worked is in the possession of the County.

Please feel free to contact my office with any questions regarding the above.

With kind regards,

Hariri Law Group

Ramin Hariri, Esq.
Attorney at Law

cc:    File
       Enclosure

**Objective**

The intent of this report is to give an account of the numerous labor law violations that have been taking place within the Construction Engineering Division, of the Department of Public Works at the County of San Diego (County), determine the causes, identify training deficiencies, and provide guidance to determine if these violations are systemic.

**Scope**

Since the resources to evaluate the data that was readily available were limited, the term "employees" will only include the following classifications working within the Construction Engineering Division:

- Engineering Technician III (ET-III)
- Assistant Engineer (Civil) (AE)
- Civil Engineer (CE)
- Senior Civil Engineer (SCE)

The employees working at the Construction Engineering Division are non-exempt and qualify for Fair Labor Standards Act (FLSA) overtime. Descriptions of each classification and examples of duties are provided in Appendix D.

**Background**

The County of San Diego hired Marcia Karen Monzon Vargas (Monzon) in May of 2019 as an Assistant Engineer (AE) to work as Office Engineer (OE) in the Construction Engineering Division of the Department of Public Works. Her supervisor at the time was Senior Civil Engineer (SCE) Redacted Employee ID

AE Monzon was later promoted to Civil Engineer (CE) on February 28th, 2020.

Shortly after Redacted Employee ID ), who was the Land Use and Environmental Group (LUEG) Program Manager (PM) of the Construction Engineering/Materials Lab Division (CEML), resigned from his position in February of 2020; SCE Redacted Employee ID was assigned the role of Interim LUEG-PM and eventually became the official LUEG-PM of the CEML Division in November of 2020.

AE Monzon, while working as OE, had the following tasks:

- Prepare pay estimates, which includes reviewing quantity calculation sheets, update pay estimate tracking spreadsheet, enter data in pay estimate software (Sharpesoft) and, after the Covid-19 pandemic was declared in 2020, prepare electronic pay estimates to accommodate for digital signatures.
- Track and update project closeout documents such as: final pay estimates and payment, as-built drawings, Final Construction Reports, and costs, and archive the files of completed projects.
- Manage records of completed projects and process them for destruction as required, per retention schedule.
- Route Notice of Completions (NOCs) for signatures and recording.
- Schedule safety meetings, topics, and presenter rotation.
- Process "Public Records Act" inquiries
- Prepare monthly "Board" update
- Track quarterly statistics of active and completed projects

- Prepare the Municipal Stormwater Management Report (JRMP) report once a year

When the Covid-19 pandemic was declared and most employees were told to telework, Human Resources (HR) sent employees a series of forms, many that required to be filled out weekly, and additional steps were implemented to track teleworking hours in electronic timesheets.

CE Monzon was suspended without pay from her class and position as CE (Class 003635) from September of 2021 through December of 2021, for not complying with HR policy 121; and thus, did not return to work until she could comply with HR policy 121; which she did, in February of 2022.

In March of 2022 shortly after CE Monzon returned to work, Redacted Employee ID, who was still CE Monzon's supervisor, informed her that she was to transfer her OE tasks to Redacted Employee ID Redacted Employee ID; and that CE Monzon would take the role of Field Inspector (FI) for the "Guardrail, Repair, Replacement, and Installation Countywide FY 20-21" construction project. CE Monzon was also informed that while working as FI, her supervisor would be Redacted Employee ID).

CE Monzon tasks as FI are as follows:

- Inspect contractor's work for compliance with contract drawings and specifications, inspect material to match description depicted in the submittals, address issues and promptly communicate the Resident Engineer (RE) of field and design discrepancies.
- Create a daily inspection report that includes the narrative of work performed in chronological order, upload photos, and document labor and equipment name, description, and hours.
- Create Calculation Sheets and backups for monthly pay estimates.
- Update the redlines on the As-built drawings as construction progresses.

Between the end of May and the beginning of June of 2022, shortly after Redacted Employee ID) gave her resignation notice, Redacted Employee ID informed CE Monzon that she was to return to her OE tasks and that AE Redacted Employee ID would be replacing Redacted Employee as the Resident Engineer (RE) for the "Ammunition Road Sidewalk Improvement and West Alvarado Street Sidewalk Improvement" construction project. Redacted Employee ID also informed CE Monzon that Redacted Employee ID an employee from the consultant firm NV5, was to replace CE Monzon as FI for the "Guardrail, Repair, Replacement, and Installation Countywide FY 20-21" construction project.

**CE Monzon's Personal Account**

I have been informed by both of my supervisors, other SCEs within the Construction Engineering Division and Capital Improvement Projects (CIP) Division, and former Redacted Employee ID that it is required for subordinate employees to ask their supervisors for approval to work overtime. It is my personal account, that whenever I asked my supervisors verbally for approval, it was usually denied under the premise that "there is no overtime for paperwork". This applies to both, Redacted Employee ID who later became LUEG-PM, and Redacted Employee ID.

It is my understanding that while working as FI, unless I must stay at the construction's site overseeing a critical activity, any request for overtime will not be approved.

It is also my account that SCEs are under the impression that even though they are hourly, they cannot charge overtime for covering work for a coworker that is out of the office, or for working after hours. It is also my understanding that employees that have no one to cover for them when they take time off, must

catch up after hours and do the work that accumulated while they were out; without charging for overtime. It is my personal account that when an employee is out of the office whether on vacation or out sick, somehow, he or she should still be available to answer work related phone calls and emails.

When the Covid-19 pandemic (pandemic) was declared in 2020 and most employees were told to telework, employees had to fill out their teleworking forms on a weekly basis, documenting the number of hours they teleworked for each day of the week, and what work they performed. Employees were also required to include additional comments and steps documenting their teleworking hours in the employee timecard software. OE tasks require the OE to work on various projects simultaneously during the week; therefore, filling the teleworking form and timesheet accurately can take anywhere from 15 minutes to an hour. It is my understanding that the expectation is to complete these tasks off the clock because "there is no overtime for paperwork".

Before the pandemic, recording an NOC document took approximately an hour and was done in person. When the pandemic was declared, first I had to spend time coordinating how to send this document to the Department of Purchasing and Contracting and then to the Recorder's office, so I could have it signed, recorded, and back within the 10-day window limit. Later, I had to drive to the Recorder's office in downtown to have the NOC recorded without charging for the additional driving time. In addition to this, while working as OE I was assigned tasks that are not the responsibility of the OE, such as taking County vehicles for maintenance, sending and receiving correspondence, scheduling FedEx pickups, and assist the administrative secretary with her tasks while she was out of the office. I had to complete these additional duties outside working hours.

In September of 2020, while working as OE, I also had to assist with the Valley Fire Debris Program project, which involved creating record tracking spreadsheets, coordinating with different departments and property owners to obtain lease agreements to deliver bins for the fire debris, assist/coordinate with the volunteers scheduled by the property owners, etc. During the three months that I worked on the project I was only allowed to charge 4 hours of overtime; even though I worked past 10:00 pm on several days.

When I started working as FI in May 2022, to avoid working overtime, I was required to complete daily inspection reports (DDs), bid item quantity calculation sheets (Q-sheets), the redlines in the As-Built drawings, and other miscellaneous paperwork on my work laptop in the car, while performing inspections at the job site. I brought to the attention of my supervisor that employees performing field inspections should be provided with ergonomic equipment to work inside the car, and that it is the responsibility of the County to look for these and purchase them.

Since the options for laptop trays that my supervisor suggested were not ergonomic, I was forced to purchase my own laptop tray to avoid a neck injury while working on it at the job site. When I asked my supervisor if I could be reimbursed for the tray, he replied that the store I bought it from did not charge sales tax and that I needed to find out if they could charge sales tax or look for another vendor. I have not done so as instructed due to the lack of time; therefore, I was not reimbursed for the laptop tray; which provides some assistance while working in the car, but it is still not ideal for prolonged use. When I contacted the Service Employee International Union 221 (Union) to ask for assistance regarding the ergonomic issue, the Union representative told me that I needed a "doctor's note" to get the ergonomic equipment. It is a dichotomy to be perfectly qualified to train coworkers during safety meetings on how to work ergonomically safe, yet I need a doctor to tell me if I, myself, am doing it correctly. Since working in the car while at the job site is commonplace to every RE and FI, I asked the Union <sup>Redacted Employee ID</sup>

<sup>Redacted Employee</sup> if this is what is required to have ergonomic equipment in the car, shouldn't the County have a nurse practitioner or any other qualified individual, to provide every employee that needs to work in the car, an ergonomic evaluation? He replied that I needed my doctor to provide the note.

<sup>Redacted Employee ID</sup> did provide me with a Samsung tablet (tablet) to help with the paperwork, which did help, but only if the iPhone that the County provided me with works properly. The tablet itself does not have access to the internet unless you connect it to the iPhone, and I need internet connection to upload electronic files. I also pointed out to both of my supervisors and other SCEs in Construction Engineering that it is almost impossible to work on the laptop in the car when the temperatures outside are over 80 degrees. When I met <sup>Redacted Employee</sup> at the construction site on June 16th, 2022, my personal iPhone and my work iPhone overheated in the 82-degree weather; we had to immediately turn off the laptop that also overheated, nor was the tablet functional.

On May 12, 2022, I contacted Union Redacted Employee ID to discuss the overtime issue and I asked if he could come to the office to talk with me and other coworkers who had questions about overtime, but he refused and said each one of us could call him separately to ask him questions. His solution to the overtime issue is to stop working after hours if overtime approval is denied. At one point it was brought to the attention of the Union that AEs and ET-IIIs were given tasks that are beyond what is described in their classification; and the Union response was dismissive, stating that if there is no other employee that can take on the tasks, supervisors could assign these tasks to AEs and ET-IIIs under training purposes, even if they do not qualify for a promotion. When the new contract negotiations between the County and the Union were completed, and the new contract did not favor me nor my coworkers, several of us decided to cancel our Union membership; it is my account that some of the newly hired employees are having trouble stopping Union membership-fee withdrawals from their paychecks.

When <sup>Redacted Employ</sup> gave her resignation notice, <sup>Redacted Employee ID</sup> assigned <sup>Redacted Employee ID</sup> to the vacant RE position, and I was told to take care of the OE tasks again. In June of 2022 while retaking the OE tasks, my supervisor <sup>Redacted Employee ID</sup> told me to have the annual JRMP report ready by July 15th. Previous year's expectation was to complete the report within a month of the fiscal year's closure, and now there is an expectation to complete the report in less than two weeks. When I informed my supervisor that having the report ready by the 15th would require 4 to 8 hours of overtime, given that Monday, July 4th was a holiday, he replied that the number of hours sounded excessive considering he completed previous reports while working in different activities at the same time. I reminded him that he used to work long hours when that was the case, and that in the past, he also had an additional two weeks to complete the report. I was only allowed to work 4 hours of overtime the week of July 4th and to coordinate with <sup>Redacted Employee ID</sup> the transfer of the OE tasks back to her the week of July 11th.

After careful consideration of my work performance and all the occasions that I had stayed after hours to complete work that I did not get paid for because of the lack of approval by my supervisors; I wondered if other employees were experiencing the same problem. I asked some of them about their daily tasks and if they could manage to complete them without incurring in overtime. Unsurprisingly, most of the employees admitted that they did in fact work after hours to complete the work without their supervisor's approval; but no one was willing to admit it openly for fear of retaliation from the County. In addition, not completing the work could likely end up in a bad performance review, especially when all other employees complete the work without charging overtime. Thus, I decided to evaluate the readily available data to determine if other employees have been working overtime, after hours, as regular as I have.

**Methodology**

In July of 2020, due to the declared pandemic, employees working at the Construction Engineering Division were required to start signing-in and out every time they were in the office. Copies of the Sign-in sheets are provided in Appendix A.

Work-related electronic correspondence (emails) sent to and from CE Monzon, after hours, are provided in Appendix B. Due to size constrains, only the last email of the day that the overtime occurred, is included in the appendix (additional emails are available upon request).

Available daily inspection reports that document the time spent in the field, as well as the job site location, are included in Appendix C.

To determine how many hours of overtime CE Monzon has worked, the following information was collected and tabulated in Table 1:

- Dates and times of emails sent after hours that are work related
- Dates and times when the sign-out time is after hours
- Dates and times when the difference between the sign-out and sign-in time is more than 8 hours (excluding the 30 minutes lunch break)
- Dates and hours spent doing field inspections plus driving time

To determine the **minimum** hours of overtime other employees have worked, the following information was collected and tabulated in Tables 2 through 12:

- Work-related emails sent to CE Monzon after hours
- Sign-in and sign-out times on Sign-in sheets
- Dates and hours spent doing field inspections plus driving time

Table 1 shows the dates and times CE Monzon worked more than 8 hours a day, the hours spent in the office, the hours spent in the field, the hours spent teleworking, the tasks than incurred in overtime, and whether the overtime was paid or not.

Tables 2 through 12 show the dates and times employees worked more than 8 hours a day, the hours spent in the office, the hours spent in the field, the estimated hours spent teleworking based on work-related email correspondence, and the tasks they were working on when they last emailed CE Monzon.

**Limitations**

The data that was readily available only cover the period of March 2020 to June 2022 and thus, any overtime incurred before 2020 is not included.

Since the exact hourly rate of the employees (aside from CE Monzon) was not readily available, an average of the hourly rate was calculated from their classification descriptions and is listed in Tables 2 through 12.

Similarly, there was no readily available information on whether the overtime incurred by the employees (other than CE Monzon), took place in a week where the employee worked at least 40 hours, or not; therefore, overtime costs for these hours were calculated at one and a half hours for both, overtime over 8 hours and less than 12, and for overtime hours after 12 hours. Likewise, work emails sent after hours by the employees to other employees aside from CE Monzon, are not available.

Overtime incurred by the employees when they were at the construction site and they did not stop at the office before or after, is not accounted for. Similarly, employees whose overtime was incurred while teleworking all day, is not accounted for either.

Because of time constrains not all employees were evaluated and data on recently hired employees have not been accounted for; similarly, only 30% of the active projects between 2020 and 2022 were available for review for daily inspection reports.

**Data Evaluation**

Tables 1 through 12 clearly show that employees work overtime regularly. Below is a summary of the minimum overtime hours incurred by the employees based on available data:

| Employee | OT hours | Paid | Unpaid |
|---|---|---|---|
| CE Monzon | 146.69 | 4 | 142.69 |
| Redacted Employee | 125.63 | N/A | N/A |
| Redacted Employee | 30.42 | N/A | N/A |
| Redacted Employee ID | 18.57 | N/A | N/A |
| Redacted Employee ID | 115.2 | N/A | N/A |
| Redacted Employee ID | 35.63 | N/A | N/A |
| Redacted Employee ID | 8.82 | N/A | N/A |
| Redacted Employee ID | 83.17 | N/A | N/A |
| Redacted Employee ID | 19.28 | N/A | N/A |
| ET-III Zarattini | 80.68 | N/A | N/A |
| Redacted Employee ID | 21.80 | N/A | N/A |
| Redacted Employee ID | 57.77 | N/A | N/A |

Based on the available data, employees have been working overtime to complete the following tasks:

- Miscellaneous paperwork related to the construction projects they are assigned to (change orders, requests for information, pay estimates and Q-sheets, downloading/uploading documents to box, resolving claim issues, resolving design issues, completing daily inspection reports, and weekly statement of working days).
- Miscellaneous paperwork related to administrative work (teleworking forms/timesheets, safety meeting presentations, misc. training).
- Covering work for coworker that is out of the office.
- Catching up with work that accumulated while out of the office (when coworker cannot cover the work)
- Solving IT issues

Tables A through G present the estimated additional overtime hours incurred by the CEs, AEs, and ET-III while performing field inspections for projects whose daily inspection reports were not readily available.

To determine if these values are correct, the following projects will need to be retrieved from storage to review their daily inspection reports:

- AC Culverts FY 19/20 Phase 2, 3, and 4 (oracle No. 1022881)
- Alta Road and Otay Mesa Road Widening Improvements (oracle No. 1021664)
- Ammunition Road Sidewalk improvements in Fallbrook (oracle No. 1022651)
- Asphalt Concrete Overlay "A" FY 18/19 (oracle No. 1021852)
- Asphalt Concrete Overlay "B" FY 18/19 (oracle No. 1022899)
- Asphalt Concrete Overlay "C" FY 18/19 (oracle No. 1022900)
- Asphalt Concrete Overlay "D" FY 18/19 (oracle No. 1022901)
- Asphalt Concrete Overlay "East" FY 19/20 (oracle No. 1022882)
- Aviation Road Sidewalk Improvement (oracle No. 1022578)
- Cajon Air Center Runaway Object Free Area Drainage Improvement (oracle No. 1021597)
- Dehesa Road at Harbison Canyon Road Improvement (oracle No. 1018455)
- ADA Curb Ramps FY 19-20 Phase 2 (oracle No. 1022883)
- Asphalt Concrete Overlay "South" FY 19/20 (oracle No. 1023438)
- Rios Canyon Road Sidewalk Improvements (oracle No. 1022613)
- Asphalt Concrete Overlay "North" FY 19/20 (oracle No. 1023468)
- Willows Road Bridge Scour Mitigation Project (oracle No. 1005322)
- AC Culverts FY 20/21 Phase 1 (oracle No. 1023464)
- Cajon Air Center Phase 3 Aircraft Transient Apron Project (oracle No. 1021017)
- Pavement Seal (REAS) FY 19/20 (oracle No. 1023456)
- Asphalt Concrete Overlay "North-Central" FY 19/20 (oracle No. 1023467)
- AC Culverts FY 18/19 Phase 5 (oracle No. 1021856)
- Sidewalk Improvements Petite Lane (oracle No. 1022624)
- Sweetwater Road Pathway Improvement Project (oracle No. 1023613)
- Repair and replace Culvert Pipes (flood control) FY 19/20 various locations (oracle No. 1023654)
- Countywide Slurry Seal Treatments FY 20/21 (oracle No. 1023455)
- Asphalt Concrete Overlay "North" FY 20/21 (oracle No. 1023454)
- Jamacha Blvd traffic signal between Sweetwater Road and Gillespie Drive (oracle No. 1021408)
- Asphalt Concrete Overlay "East" FY 20/21 (oracle No. 1024268)
- Asphalt Concrete Overlay "South" FY 20/21 (oracle No. 1024263)
- Traffic Signals (Old Hwy 395 & South Mission Road) (oracle No. 1024933 and 1024956)
- Live Oak Park Road Bridge Replacement Project (oracle No. 1017001)
- Los Coches Sewer Improvements (oracle No. 1023359)
- Birch St and D St Sidewalk Improvements (oracle No. 1023591 and 1023592)

Regarding the SCEs, copies of emails sent after hours should be evaluated to determine the additional overtime hours they worked. This should also apply to CEs, AEs, and ET-III. Table H presents the estimated additional overtime hours incurred by SCE Brady while teleworking; these values will need to be corroborated with SCE Brady's teleworking forms.

Below is a summary of the data presented in Tables 1 thought 12 and A through H:

| Employee | OT hours based on available data (Table 1 through 12) | | Additional OT hours pending DD and timesheet review (Table A through H) | | Total | | Unpaid |
|---|---|---|---|---|---|---|---|
| | hours | earnings | hours | earnings | hours | earnings | earnings |
| CE Monzon | 146.69 | $9,498.00 | N/A | N/A | 146.69 | $9,498.00 | $9,318.88 |
| Redacted Employee | 125.63 | $6,542.36 | 83.33 | $4,339.58 | 208.97 | $10,881.94 | N/A |
| Redacted Employee | 30.42 | $1,583.95 | 31.50 | $1,640.36 | 61.92 | $3,224.31 | N/A |
| Redacted Employee ID ) | 18.57 | $966.86 | N/A | N/A | 18.57 | $966.86 | N/A |
| Redacted Employee ID | 115.2 | $4,793.47 | 29.67 | $1,234.43 | 144.87 | $6,027.90 | N/A |
| Redacted Employee ID | 35.63 | $1,482.52 | 20.17 | $839.03 | 55.80 | $2,321.56 | N/A |
| Redacted Employee ID | 8.82 | $366.86 | 7.48 | $311.34 | 16.30 | $678.21 | N/A |
| Redacted Employee ID ) | 83.17 | $3,460.15 | N/A | N/A | 83.17 | $3,460.15 | N/A |
| Redacted Employee ID) | 19.28 | $802.28 | 11.60 | $482.62 | 30.88 | $1,284.90 | N/A |
| ET-III Zarattini | 80.68 | $3,134.95 | 49.5 | $1,923.32 | 130.18 | $5,058.27 | N/A |
| Redacted Employee I | 21.8 | $1,312.80 | 4.12 | $247.91 | 25.92 | $1,560.70 | N/A |
| Redacted Employee ID | 57.77 | $3,478.71 | N/A | N/A | 57.77 | $3,478.71 | N/A |

## Conclusions

Employees working at the Construction Engineering Division are overworked and underpaid. They are expected to deliver the same work performance quality as consultants, yet they only get paid between 1/3 to 1/4 of what the County pays the consultants.  Appendix B includes work-related emails sent by consultants after work hours and on weekends.

The lack of knowledge of labor laws by the employees, and the lack of support from the Union has made the situation unsustainable; with talented employees resigning from their positions, transferring to other departments, and sharing their experiences with potential candidates who then get discouraged from working at the Construction Engineering Division.

## Recommendations

A thorough investigation must be performed to determine the true amount of overtime hours worked by the employees listed in this report, as well as the employees that are not listed in the report but work in the Construction Engineering Division.

Since employees working as FIs or REs are required to conduct monthly labor compliance interviews in the field with the contractor's employees, a similar methodology must be implemented by the County to verify that County employees are also being paid appropriately.

Labor Compliance and Management training should be provided to County employees to avoid ambiguity regarding their roles and responsibilities, especially when consultants are involved; and to prevent supervisors from violating labor laws such as denying approval to work overtime, which then forces employees to complete the work in their personal time; or requiring them to be available to answer work related emails and phone calls when they are out of the office (vacation, sick leave, lunch time).

# TABLE 1

**TABLE 1 - CE Monzon**

Employee Name: Marcia Karen Monzon Vargas
Classification: Civil Engineer
Employee Schedule: 7:30 am to 4:00 pm (30 minutes lunch)

| Date | Office Sign-In sheets In | Out | Last email sent at: | Field? | Driving hours to and from field | Hours at the field | tele-working? | tele-working hours | Hours in the office | hours over 8 and less than 12 per day | hours over 12 per day | PAID OT HOURS | UNPAID OT HOURS | worked at least 40 hours during the week? | HOURLY RATE | UNPAID OVERTIME | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/19/2020 | N/A | N/A | 4:33 PM | Y | 1.00 | 0.55 | N | 0.00 | 7.00 | 0.55 | 0.00 | 0.00 | 0.55 | N | $44.11 | $24.26 | Recorder's office on Clairmont Mesa Blvd closed. Needed to drive to downtown to record NOC. |
| 3/26/2020 | N/A | N/A | 4:28 PM | N | 0.00 | 0.00 | N | 0.00 | 8.47 | 0.47 | 0.00 | 0.00 | 0.47 | Y | $44.11 | $20.58 | Correspondence tracking for Steele Canyon PEPE. PRA response and closeout documents AC Culverts FY 17-18. |
| 4/6/2020 | N/A | N/A | 4:42 PM | N | 0.00 | 0.00 | Y | 8.70 | 0.00 | 0.70 | 0.00 | 0.00 | 0.70 | Y | $44.11 | $46.32 | CMIS new project setup and pay estimates |
| 4/7/2020 | N/A | N/A | 5:30 PM | N | 0.00 | 0.00 | Y | 9.50 | 0.00 | 1.50 | 0.00 | 0.00 | 1.50 | Y | $44.11 | $99.25 | PEPE for Lemon Crest Drive, other pay estimates and last minute changes. |
| 4/16/2020 | N/A | N/A | 5:52 PM | N | 0.00 | 0.00 | Y | 9.87 | 0.00 | 1.87 | 0.00 | 0.00 | 1.87 | Y | $44.11 | $123.51 | Dehesa Road pay estimate revisions, EWBs, CCOs |
| 4/24/2020 | N/A | N/A | 4:39 PM | N | 0.00 | 0.00 | N | 0.00 | 8.65 | 0.65 | 0.00 | 0.00 | 0.65 | N | $44.11 | $28.67 | Sent schedule update to supervisors and submit teleworking form. Udated the Code of Safe Practices to include "Continuity of Operations During Disaster/Pandemic Times" |
| 5/4/2020 | N/A | N/A | 4:19 PM | N | 0.00 | 0.00 | N | 0.00 | 8.32 | 0.32 | 0.00 | 0.00 | 0.32 | Y | $44.11 | $13.97 | CIP quarterly statistics tracking and PRA closeout docs. |
| 5/18/2020 | N/A | N/A | 4:54 PM | N | 0.00 | 0.00 | N | 0.00 | 8.90 | 0.90 | 0.00 | 0.00 | 0.90 | Y | $44.11 | $39.70 | Timecard Issues - Questions on billing codes. Reached out to HR for guidance, none provided. |
| 5/28/2020 | N/A | N/A | 5:20 PM | N | 0.00 | 0.00 | N | 0.00 | 9.33 | 1.33 | 0.00 | 0.00 | 1.33 | N | $44.11 | $58.81 | PRA closeout docs, project closeout - project files review. |
| 6/1/2020 | N/A | N/A | 4:15 PM | N | 0.00 | 0.00 | N | 0.00 | 8.25 | 0.25 | 0.00 | 0.00 | 0.25 | N | $44.11 | $11.03 | revised Q-sheet for Aviation PE #3 |
| 6/2/2020 | N/A | N/A | 4:38 PM | N | 0.00 | 0.00 | N | 0.00 | 8.63 | 0.63 | 0.00 | 0.00 | 0.63 | N | $44.11 | $27.94 | coordinating/transfering pending work to coworker Redacted Employee ID in preparation of future scheduled time-off due to vacation. |
| 6/29/2020 | N/A | N/A | 4:19 PM | N | 0.00 | 0.00 | Y | 1.00 | 0.00 | 1.00 | 0.00 | 0.00 | 1.00 | N | $44.78 | $67.17 | Communication with Christina to take care of additional pending tasks. (working while on vacation) |
| 7/22/2020 | 8:00 AM | 5:30 PM | 1:26 PM | N | 0.00 | 0.00 | N | 0.00 | 9.00 | 1.00 | 0.00 | 0.00 | 1.00 | N | $44.78 | $44.78 | Pay Estimate processing, As-built processing and catch up on work due to the 3 hours of sick leave taken during the 7/13 to 7/23 week period. |
| 7/23/2020 | N/A | N/A | 7:08 PM | N | 0.00 | 0.00 | Y | 11.13 | 0.00 | 3.13 | 0.00 | 0.00 | 3.13 | N | $44.78 | $210.47 | Catch up on work (3 hours of sick leave during the 7/13 to 7/23 week period). Update calculation sheets for pay estimates and addressed revisions to the monthly board update report. JRMP report. |
| 7/28/2020 | 8:00 AM | 5:10 PM | 5:10 PM | N | 0.00 | 0.00 | N | 0.00 | 8.67 | 0.67 | 0.00 | 0.00 | 0.67 | Y | $44.78 | $29.85 | Pay estimate bid item transfer excess to field order/CCO, workspaces update. |
| 7/31/2020 | 7:45 AM | 4:30 PM | 3:36 PM | N | 0.00 | 0.00 | N | 0.00 | 8.25 | 0.25 | 0.00 | 0.00 | 0.25 | N | $44.78 | $11.20 | 2020 DPW HIPP with current updated Cal-OSHA standards training (Took 4 hours of sick leave during the week of 7/31 to 8/6) |

**TABLE 1 - CE Monzon**

**Employee Name:** Marcia Karen Monzon Vargas
**Classification:** Civil Engineer
**Employee Schedule:** 7:30 am to 4:00 pm (30 minutes lunch)

| Date | Office Sign-In sheets | | Last email sent at: | Field? | Driving hours to and from field | Hours at the field | tele-working? | tele-working hours | Hours in the office | hours over 8 and less than 12 per day | hours over 12 per day | PAID OT HOURS | UNPAID OT HOURS | worked at least 40 hours during the week? | HOURLY RATE | UNPAID OVERTIME | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | In | Out | | | | | | | | | | | | | | | |
| 8/5/2020 | 7:50 AM | 5:15 PM | 4:29 PM | N | 0.00 | 0.00 | N | 0.00 | 8.92 | 0.92 | 0.00 | 0.00 | 0.92 | N | $44.78 | $41.05 | [Took 4 hours of sick leave during the week of 7/31 to 8/6). FedEx shipping coordinating with secretary from wastewater. PFPE for Aviation. Catch up on work that accumulated during sick leave. |
| 8/20/2020 | N/A | N/A | 4:25 PM | N | 0.00 | 0.00 | Y | 8.42 | 0.00 | 0.42 | 0.00 | 0.00 | 0.42 | Y | $44.78 | $27.99 | monthly board update follow up. |
| 8/26/2020 | 7:50 AM | 8:45 PM | 2:42 PM | N | 0.00 | 0.00 | N | 0.00 | 12.42 | 4.00 | 0.42 | 0.00 | 4.42 | Y | $44.78 | $197.93 | Labor compliance update for PFPE. (Took 3 hours of sick leave the week of 8/21 to 8/27). Caught up on work that accumulated during sick leave (project archive). |
| 9/3/2020 | 7:30 AM | 4:20 PM | 3:00 PM | N | 0.00 | 0.00 | N | 0.00 | 8.33 | 0.33 | 0.00 | 0.00 | 0.33 | Y | $44.78 | $14.93 | CCO processing. Pay Estimate processing (new project). |
| 9/21/2020 | N/A | N/A | 7:35 PM | N | 0.00 | 0.00 | N | 0.00 | 11.58 | 3.58 | 0.00 | 1.00 | 2.58 | Y | $44.78 | $115.68 | Schedule update to supervisor, Valley Fire volunteer and bin scheduling update. |
| 9/22/2020 | 9:10 AM | 7:00 PM | 7:04 PM | N | 0.00 | 0.00 | Y | 5.00 | 9.33 | 4.00 | 2.33 | 1.00 | 5.33 | Y | $44.78 | $410.48 | Valley Fire spreadsheet update at the office (storage room lights burned out). Did 2 hours of teleworking before getting to the office and 3 hours after leaving the office. Lease preparation with map exhibit, site specific update. project filing, in addition to OE regular tasks such as pay estimates Q-sheet reviews, project closeout, etc. |
| 9/23/2020 | 8:15 AM | 8:20 PM | 8:04 PM | N | 0.00 | 0.00 | Y | 4.00 | 11.58 | 4.00 | 3.58 | 1.00 | 6.58 | Y | $44.78 | $522.43 | Valley Fire - maps/drawings update. Teleworked one hour before getting to the office and then 3 hours after leaving the office. Lease preparation with map exhibit, site specific update. project filing, in addition to OE regular tasks such as Q-sheet reviews, as-built processing, closeout spreadsheet update, etc. |
| 9/24/2020 | 8:55 AM | 7:25 PM | 10:24 PM | N | 0.00 | 0.00 | Y | 3.40 | 10.00 | 4.00 | 1.40 | 1.00 | 4.40 | Y | $44.78 | $326.89 | Valley Fire - property/volunteer schedule and update on destroyed dwellings. Teleworked 1 hour in the morning and 2.4 hours after leaving the office. Records management. Issues with properties APNs for Valley Fire. |
| 9/25/2020 | N/A | N/A | 10:23 PM | N | 0.00 | 0.00 | Y | 14.38 | 0.00 | 4.00 | 2.38 | 0.00 | 6.38 | N | $44.78 | $482.13 | (Took 8 hours vacation leave during the week of 9/25 to 10/1). Valley Fire - lease agreements. New addresses, PMM prep. |
| 9/28/2020 | N/A | N/A | 5:01 PM | N | 0.00 | 0.00 | Y | 1.00 | 0.00 | 1.00 | 0.00 | 0.00 | 1.00 | N | $44.78 | $67.17 | Valley Fire - property assessment (working while on vacation) |
| 10/2/2020 | N/A | N/A | 4:33 PM | N | 0.00 | 0.00 | Y | 8.55 | 0.00 | 0.55 | 0.00 | 0.00 | 0.55 | Y | $44.78 | $36.94 | Valley fire spreadsheet update |

**TABLE 1 - CE Monzon**

Employee Name: Marcia Karen Monzon Vargas
Classification: Civil Engineer
Employee Schedule: 7:30 am to 4:00 pm (30 minutes lunch)

| Date | In | Out | Last email sent at: | Field? | Driving hours to and from field | Hours at the field | tele-working? | tele-working hours | Hours in the office | hours over 8 and less than 12 per day | hours over 12 per day | PAID OT HOURS | UNPAID OT HOURS | worked at least 40 hours during the week? | HOURLY RATE | UNPAID OVERTIME | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/4/2020 | N/A | N/A | 4:31 PM | N | 0.00 | 0.00 | Y | 1.00 | 0.00 | 1.00 | 0.00 | 0.00 | 1.00 | Y | $44.78 | $67.17 | working on a Sunday. Valley Fire. |
| 10/6/2020 | N/A | N/A | 4:49 PM | N | 0.00 | 0.00 | Y | 8.82 | 0.00 | 0.82 | 0.00 | 0.00 | 0.82 | Y | $44.78 | $54.86 | FCR review, safety meeting coordination, and Valley Fire Site Specific Update. |
| 10/10/2020 | N/A | N/A | 4:45 PM | N | 0.00 | 0.00 | Y | 1.00 | 0.00 | 1.00 | 0.00 | 0.00 | 1.00 | Y | $44.78 | $67.17 | Valley Fire - lease agreements (Saturday) |
| 10/14/2020 | 7:45 AM | 5:00 PM | 4:39 PM | N | 0.00 | 0.00 | N | 0.00 | 8.75 | 0.75 | 0.00 | 0.00 | 0.75 | Y | $44.78 | $33.59 | SCADA - PRA response, PFPEs |
| 10/29/2020 | 8:30 AM | 6:00 PM | 5:47 PM | N | 0.00 | 0.00 | N | 0.00 | 9.00 | 1.00 | 0.00 | 0.00 | 1.00 | Y | $44.78 | $44.78 | Valley Fire - new address |
| 11/4/2020 | 7:30 AM | 4:15 PM | 3:00 PM | N | 0.00 | 0.00 | N | 0.00 | 8.25 | 0.25 | 0.00 | 0.00 | 0.25 | Y | $44.78 | $11.20 | Update RE forms. |
| 11/13/2020 | N/A | N/A | 7:16 PM | N | 0.00 | 0.00 | Y | 1.00 | 0.00 | 1.00 | 0.00 | 0.00 | 1.00 | N | $44.78 | $67.17 | DBI presentation, working while on sick leave. |
| 12/20/2020 | N/A | N/A | 6:53 PM | N | 0.00 | 0.00 | Y | 0.50 | 0.00 | 0.50 | 0.00 | 0.00 | 0.50 | Y | $44.78 | $33.59 | Teleworking form sent on a Sunday |
| 1/5/2021 | 11:45 AM | 5:45 PM | 4:20 PM | N | 0.00 | 0.00 | Y | 4.00 | 5.50 | 1.50 | 0.00 | 0.00 | 1.50 | N | $44.78 | $100.76 | Took County vehicle for maintenance. |
| 1/6/2021 | N/A | N/A | 8:42 PM | N | 0.00 | 0.00 | Y | 4.00 | 8.70 | 4.00 | 0.70 | 0.00 | 4.70 | N | $44.78 | $331.37 | set up project in CMIS, Pavement Seal FY 19-20 oracle #1022884 - PFPE #6 |
| 1/7/2021 | 1:00 PM | 6:45 PM | 6:42 PM | N | 0.00 | 0.00 | Y | 4.00 | 5.75 | 1.75 | 0.00 | 0.00 | 1.75 | N | $44.78 | $117.55 | ACO projects tracking update. Catching up on work that accumulated while I was on vacation |
| 1/9/2021 | N/A | N/A | 6:13 PM | N | 0.00 | 0.00 | Y | 2.00 | 0.00 | 2.00 | 0.00 | 0.00 | 2.00 | Y | $44.78 | $134.34 | AC Overlay pay estimate routing in Saturday (catch up work) |
| 1/11/2021 | N/A | N/A | 5:22 PM | N | 0.00 | 0.00 | Y | 9.37 | 0.00 | 1.37 | 0.00 | 0.00 | 1.37 | Y | $44.78 | $91.80 | AC Overlay pay estimate multiple revisions |
| 1/14/2021 | N/A | N/A | 5:04 PM | N | 0.00 | 0.00 | Y | 9.07 | 0.00 | 1.07 | 0.00 | 0.00 | 1.07 | Y | $44.78 | $71.65 | timecard approval / PRA response to requestor, catch up on work. |
| 1/19/2021 | N/A | N/A | 4:43 PM | N | 0.00 | 0.00 | Y | 8.72 | 0.00 | 0.72 | 0.00 | 0.00 | 0.72 | N | $44.78 | $48.14 | Rios Canyon Road Sidewalk Improvements - Q Sheets for Review |
| 1/20/2021 | 9:00 AM | 6:00 PM | 5:19 PM | N | 0.00 | 0.00 | N | 0.00 | 8.50 | 0.50 | 0.00 | 0.00 | 0.50 | N | $44.78 | $22.39 | monthly board update follow up. Archiving. Assisting with claim |
| 1/28/2021 | 10:25 AM | 4:40 PM | 4:20 PM | N | 0.00 | 0.00 | Y | 3.00 | 5.75 | 0.75 | 0.00 | 0.00 | 0.75 | Y | $44.78 | $50.38 | RE: 18/19 ADA Ramps - Ramp 353 / IT issues |
| 2/2/2021 | 12:15 PM | 5:10 PM | 3:54 PM | N | 0.00 | 0.00 | Y | 4.00 | 4.92 | 0.92 | 0.00 | 0.00 | 0.92 | N | $44.78 | $61.57 | Administrative Procedures update |
| 2/22/2021 | 11:40 AM | 4:30 PM | 4:19 PM | N | 0.00 | 0.00 | Y | 4.00 | 4.33 | 0.33 | 0.00 | 0.00 | 0.33 | N | $44.78 | $22.39 | Ammunition Rd project filing (archiving) |
| 2/25/2021 | 1:40 PM | 6:30 PM | 5:08 PM | N | 0.00 | 0.00 | Y | 6.17 | 4.83 | 3.00 | 0.00 | 0.00 | 3.00 | Y | $44.78 | $201.51 | Oleander Ave As-Built drawings / Q-sheets, NOC interoffice mail issues |
| 3/2/2021 | N/A | N/A | 4:34 PM | N | 0.00 | 0.00 | Y | 8.57 | 0.00 | 0.57 | 0.00 | 0.00 | 0.57 | Y | $47.02 | $39.97 | ACO East 19-20; PPE 9 Feb 2021, interoffice mail issues |
| 3/3/2021 | 12:30 PM | 6:45 PM | 5:11 PM | N | 0.00 | 0.00 | Y | 4.00 | 5.75 | 1.75 | 0.00 | 0.00 | 1.75 | Y | $47.02 | $123.43 | Interoffice mail issues, NOC critical status. |
| 3/4/2021 | 12:45 PM | 7:30 PM | 5:34 PM | N | 0.00 | 0.00 | Y | 4.75 | 6.75 | 3.50 | 0.00 | 0.00 | 3.50 | Y | $47.02 | $246.86 | Cajon Air Center Phase 3 - PE #5, interoffice mail issues, NOC critical status. |
| 3/10/2021 | 11:15 AM | 5:00 PM | 3:28 PM | N | 0.00 | 0.00 | Y | 4.00 | 5.25 | 1.25 | 0.00 | 0.00 | 1.25 | Y | $47.02 | $88.16 | Archiving issues/IT issues |
| 3/17/2021 | 11:50 AM | 5:20 PM | 2:33 PM | N | 0.00 | 0.00 | Y | 4.00 | 5.00 | 1.00 | 0.00 | 0.00 | 1.00 | N | $47.02 | $70.53 | Catch up on closeout document tracking, new project setup, CMIS. |

**TABLE 1 - CE Monzon**

**Employee Name:** Marcia Karen Monzon Vargas
**Classification:** Civil Engineer
**Employee Schedule:** 7:30 am to 4:00 pm (30 minutes lunch)

| Date | Office Sign-in sheets | | Last email sent at: | Field? | Driving hours to and from field | Hours at the field | tele-working? | tele-working hours | Hours in the office | hours over 8 and less than 12 per day | hours over 12 per day | PAID OT HOURS | UNPAID OT HOURS | worked at least 40 hours during the week? | HOURLY RATE | UNPAID OVERTIME | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | In | Out | | | | | | | | | | | | | | | |
| 3/22/2021 | 1:15 PM | 6:50 PM | 5:04 PM | N | 0.00 | 0.00 | Y | 4.00 | 5.08 | 1.08 | 0.00 | 0.00 | 1.08 | Y | $47.02 | $76.41 | San Miguel Rd and Oleander Ave - PE06 Quantity Sheets revisions and catch up on closeout docs, archiving. |
| 3/26/2021 | 9:00 AM | 6:30 PM | 5:53 PM | N | 0.00 | 0.00 | N | 0.00 | 9.00 | 1.00 | 0.00 | 0.00 | 1.00 | N | $47.02 | $47.02 | teleworking form, catching up on closeout docs, archiving/records management |
| 3/29/2021 | N/A | N/A | 6:01 PM | N | 0.00 | 0.00 | Y | 10.02 | 0.00 | 2.02 | 0.00 | 0.00 | 2.02 | N | $47.02 | $142.24 | safety meeting presentation follow up/assist |
| 4/7/2021 | 12:45 PM | 5:15 PM | 4:51 PM | N | 0.00 | 0.00 | Y | 4.00 | 4.00 | 0.00 | 0.00 | 0.00 | 0.00 | Y | $47.02 | $0.00 | AC Overlay pay estimate additional revisions and prepare documents for new student worker |
| 4/16/2021 | 7:55 AM | N/A | 5:24 PM | N | 0.00 | 0.00 | N | 0.00 | 8.98 | 0.98 | 0.00 | 0.00 | 0.98 | Y | $47.02 | $46.24 | PRA (routed from a different department) time extension letter (on Friday) - ACO 'A' FY 18-19 |
| 4/27/2021 | 7:35 AM | 4:55 PM | 2:43 PM | N | 0.00 | 0.00 | N | 0.00 | 8.83 | 0.83 | 0.00 | 0.00 | 0.83 | Y | $47.02 | $39.18 | CCOs processing for PFPE, closeout docs/monthly board update. |
| 4/30/2021 | 7:40 AM | 4:40 PM | 4:37 PM | N | 0.00 | 0.00 | N | 0.00 | 8.50 | 0.50 | 0.00 | 0.00 | 0.50 | Y | $47.02 | $23.51 | statistics quarterly tracking FY 20-21.xlsx, Acme - Construction PRA request, and teleworking form submittal |
| 5/14/2021 | 12:45 PM | 5:00 PM | 4:43 PM | N | 0.00 | 0.00 | Y | 4.00 | 4.25 | 0.25 | 0.00 | 0.00 | 0.25 | Y | $47.02 | $17.63 | PRA closeout, teleworking form |
| 5/20/2021 | N/A | N/A | 4:36 PM | N | 0.00 | 0.00 | Y | 8.60 | 0.00 | 0.60 | 0.00 | 0.00 | 0.60 | Y | $47.02 | $42.32 | Valley Fire related, records management |
| 6/1/2021 | N/A | N/A | 5:06 PM | N | 0.00 | 0.00 | Y | 9.10 | 0.00 | 1.10 | 0.00 | 0.00 | 1.10 | N | $47.02 | $77.58 | Progress Pay Estimate Discrepancy |
| 6/4/2021 | N/A | N/A | 6:06 PM | N | 0.00 | 0.00 | Y | 10.10 | 0.00 | 2.10 | 0.00 | 0.00 | 2.10 | N | $47.02 | $148.11 | new project pay estimate revisions |
| 6/24/2021 | 7:33 AM | 5:00 PM | 4:48 PM | N | 0.00 | 0.00 | N | 0.00 | 8.95 | 0.95 | 0.00 | 0.00 | 0.95 | Y | $48.19 | $45.78 | office material request, JRMP report |
| 6/25/2021 | N/A | N/A | 5:39 PM | N | 0.00 | 0.00 | Y | 9.65 | 0.00 | 1.65 | 0.00 | 0.00 | 1.65 | Y | $48.19 | $119.27 | NOC tracking, pay estimate revisions |
| 6/28/2021 | 7:35 AM | 5:10 PM | 4:42 PM | N | 0.00 | 0.00 | N | 0.00 | 9.08 | 1.08 | 0.00 | 0.00 | 1.08 | Y | $48.19 | $52.21 | PRA case #: 40-72593-178 (14 final) |
| 7/1/2021 | 7:35 AM | 4:35 PM | 3:44 PM | N | 0.00 | 0.00 | N | 0.00 | 8.50 | 0.50 | 0.00 | 0.00 | 0.50 | Y | $48.19 | $24.10 | archiving |
| 7/30/2021 | N/A | N/A | 5:15 PM | N | 0.00 | 0.00 | Y | 9.25 | 0.00 | 1.25 | 0.00 | 0.00 | 1.25 | N | $48.19 | $90.36 | pay estimate/JRMP report |
| 8/12/2021 | 7:07 AM | 8:40 PM | 1:08 PM | N | 0.00 | 0.00 | N | 0.00 | 13.05 | 4.00 | 1.05 | 0.00 | 5.05 | N | $48.19 | $243.36 | catch up on work that accumulated while I was sick |
| 8/18/2021 | 7:00 AM | 4:00 PM | 2:52 PM | N | 0.00 | 0.00 | N | 0.00 | 8.50 | 0.50 | 0.00 | 0.00 | 0.50 | Y | $48.19 | $24.09 | pay estimate revisions |
| 9/8/2021 | N/A | N/A | 7:34 PM | N | 0.00 | 0.00 | Y | 11.57 | 0.00 | 3.57 | 0.00 | 0.00 | 3.57 | N | $48.19 | $257.82 | Safety Presentation - HR policy 121 discussion/correspondence |
| 2/14/2022 | 7:08 AM | 4:08 PM | 3:46 PM | N | 0.00 | 0.00 | N | 0.00 | 8.50 | 0.50 | 0.00 | 0.00 | 0.50 | Y | $48.19 | $24.09 | New project info. Timecard. |
| 2/25/2022 | N/A | N/A | 5:59 PM | N | 0.00 | 0.00 | Y | 9.98 | 0.00 | 1.98 | 0.00 | 0.00 | 1.98 | N | $48.19 | $143.37 | Q-sheets for BPMP No 5 (14 bid schedules) and PE |
| 3/2/2022 | N/A | N/A | 7:52 PM | N | 0.00 | 0.00 | Y | 11.87 | 0.00 | 3.87 | 0.00 | 0.00 | 3.87 | N | $48.19 | $279.74 | Catch up on work that accumulated while I was sick |
| 3/3/2022 | N/A | N/A | 4:29 PM | N | 0.00 | 0.00 | Y | 4.00 | 4.48 | 0.48 | 0.00 | 0.00 | 0.48 | N | $48.19 | $34.94 | Answering emails sent after hours |
| 3/8/2022 | N/A | N/A | 5:54 PM | N | 0.00 | 0.00 | Y | 9.90 | 0.00 | 1.90 | 0.00 | 0.00 | 1.90 | N | $48.19 | $137.34 | Catch up on work that accumulated while I was sick. |
| 3/9/2022 | 7:35 AM | N/A | 4:49 PM | N | 0.00 | 0.00 | N | 0.00 | 8.92 | 0.92 | 0.00 | 0.00 | 0.92 | N | $48.19 | $44.17 | written exam administration for the assistant engineer position interviewees |
| 3/23/2022 | 7:30 AM | 4:15 PM | 2:44 PM | N | 0.00 | 0.00 | N | 0.00 | 8.25 | 0.25 | 0.00 | 0.00 | 0.25 | N | $48.19 | $12.05 | timecard |
| 4/6/2022 | 7:50 AM | 4:40 PM | 4:34 PM | N | 0.00 | 0.00 | N | 0.00 | 8.33 | 0.33 | 0.00 | 0.00 | 0.33 | Y | $48.19 | $16.06 | checks costs for MBGR FY 20-21 (discrepancies) |
| 4/7/2022 | 7:10 AM | N/A | 4:18 PM | N | 0.00 | 0.00 | N | 0.00 | 8.63 | 0.63 | 0.00 | 0.00 | 0.63 | Y | $48.19 | $30.52 | PUBLIC RECORD REQUEST and routing PFPEs |

**TABLE 1 - CE Monzon**

Employee Name: Marcia Karen Monzon Vargas
Classification: Civil Engineer
Employee Schedule: 7:30 am to 4:00 pm (30 minutes lunch)

| Date | Office Sign-in sheets In | Out | Last email sent at: | Field? | Driving hours to and from field | Hours at the field | tele-working? | tele-working hours | Hours in the office | hours over 8 and less than 12 per day | hours over 12 per day | PAID OT HOURS | UNPAID OT HOURS | worked at least 40 hours during the week? | HOURLY RATE | UNPAID OVERTIME | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/22/2022 | N/A | N/A | 5:07 PM | N | 0.00 | 0.00 | Y | 9.12 | 0.00 | 1.12 | 0.00 | 0.00 | 1.12 | Y | $48.19 | $80.72 | transferring OE tasks to [Redacted Employee ID] teleworking form. |
| 4/29/2022 | 7:35 AM | 4:20 PM | 4:01 PM | N | 0.00 | 0.00 | N | 0.00 | 8.25 | 0.25 | 0.00 | 0.00 | 0.25 | Y | $48.19 | $12.05 | submittal review for MBGR FY 20-21 |
| 5/2/2022 | N/A | N/A | 6:45 PM | Y | 2.00 | 6.00 | Y | 2.75 | 0.00 | 2.75 | 0.00 | 0.00 | 2.75 | Y | $48.19 | $198.78 | MBGR FY 20-21 photos upload / IT issues and Q-sheets |
| 5/3/2022 | 1:45 PM | 4:40 PM | 9:33 PM | Y | 1.00 | 5.25 | Y | 3.00 | 2.92 | 4.00 | 0.17 | 0.00 | 4.17 | Y | $48.19 | $305.52 | MBGR FY 20-21 photos upload / IT issues |
| 5/4/2022 | N/A | N/A | 5:44 PM | Y | 1.00 | 7.00 | Y | 1.23 | 0.00 | 1.73 | 0.00 | 0.00 | 1.23 | Y | $48.19 | $88.91 | MBGR FY 20-21 photos upload, Submittal 11 MBGR & Type A End Cap COC review/comments |
| 5/5/2022 | 7:20 AM | 8:30 AM | 5:06 PM | Y | 1.00 | 6.00 | Y | 0.60 | 1.17 | 0.77 | 0.00 | 0.00 | 0.77 | Y | $48.19 | $55.42 | teleworking form, MBGR FY 20-21 photos upload, And Tablet Device to InTune setup issues |
| 5/9/2022 | 2:00 PM | 5:30 PM | 3:16 PM | Y | 1.50 | 4.50 | N | 0.00 | 3.50 | 1.50 | 0.00 | 0.00 | 1.50 | N | $48.19 | $72.28 | catch up on for the MBGR project (due to IT issues) |
| 5/11/2022 | 2:15 PM | 4:00 PM | 6:06 PM | Y | 1.50 | 5.50 | Y | 0.50 | 1.75 | 1.25 | 0.00 | 0.00 | 1.25 | N | $48.19 | $90.36 | work on June 20th (County holiday) discussion. Meeting with OE to address questions/comments/improvements. |
| 5/13/2022 | 7:45 AM | 5:05 PM | 7:13 PM | N | 0.00 | 0.00 | Y | 1.72 | 8.83 | 2.55 | 0.00 | 0.00 | 2.55 | Y | $48.19 | $184.33 | MBGR FY 20-21 Q-sheets and schedule for week of 5/16/22 and tablet setup issues |
| 5/16/2022 | 1:20 PM | 3:30 PM | 4:36 PM | Y | 0.83 | 5.17 | Y | 0.60 | 2.17 | 0.77 | 0.00 | 0.00 | 0.77 | Y | $48.19 | $55.42 | IT / tablet setup issues |
| 5/19/2022 | 7:30 AM | 4:15 PM | 4:13 PM | N | 0.00 | 0.00 | N | 0.00 | 8.25 | 0.25 | 0.00 | 0.00 | 0.25 | Y | $48.19 | $12.05 | timecard |
| 5/20/2022 | 12:55 PM | 4:15 PM | 3:58 PM | Y | 1.00 | 4.50 | N | 0.00 | 3.33 | 0.83 | 0.00 | 0.00 | 0.83 | Y | $48.19 | $40.16 | scanning material inspection reports. And updating redlines. |
| 5/25/2022 | N/A | N/A | 8:39 PM | Y | 2.00 | 6.58 | Y | 5.00 | 0.00 | 4.00 | 1.58 | 0.00 | 5.58 | Y | $48.19 | $441.42 | |
| 5/26/2022 | N/A | 4:15 PM | 2:00 PM | Y | 2.00 | 5.67 | Y | 0.75 | 0.00 | 0.42 | 0.00 | 0.00 | 0.42 | Y | $48.19 | $30.12 | MBGR FY 20-21 photo upload/iphone issues |
| 6/10/2022 | 11:15 AM | 4:40 PM | 1:57 PM | Y | 1.50 | 3.00 | N | 0.00 | 5.42 | 1.92 | 0.00 | 0.00 | 1.92 | N | $48.19 | $92.36 | miscellaneous paperwork for the MBGR project |
| 6/13/2022 | 2:30 PM | 4:15 PM | 8:23 PM | Y | 1.50 | 5.08 | N | 0.00 | 1.75 | 0.33 | 0.00 | 0.00 | 0.33 | N | $48.19 | $16.06 | revise information to depic the right product on DD for MBGR FY 20-21 |

Paid OT hours = 4.00 hrs    3%
Unpaid OT hours = 142.69 hrs    $9,318.88

TABLE 7

**TABLE 7 - ET-III Zarattini**

Employee Name: Andrea Zarattini
Classification: Engineering Technician III
Employee Schedule: 7:00 am to 3:30 pm (30 minutes lunch)

| Date | Office Sign-in sheets | | time email was sent to CE Monzon | Field? | Driving hours to and from field | Hours at the field | Estimated tele-working hours * | Hours in the office | hours over 8 per day | HOURLY RATE (estimated) | OVERTIME | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | In | Out | | | | | | | | | | |
| 7/17/2020 | 6:50 AM | 4:50 PM | N/A | N/A | N/A | N/A | N/A | 9.50 | 1.50 | $38.86 | $87.42 | in office        covered field work at Avocado Blvd. |
| 7/20/2020 | 6:30 AM | 4:30 PM | N/A | N/A | N/A | N/A | N/A | 9.50 | 1.50 | $38.86 | $87.42 | in office |
| 7/21/2020 | 6:30 AM | 8:00 AM | N/A | Y | 1.00 | 6.00 | N/A | 1.50 | 0.50 | $38.86 | $29.14 | field work at Avocado Blvd |
| 7/22/2020 | 6:00 AM | 8:00 AM | N/A | Y | 1.00 | 6.00 | N/A | 2.00 | 1.00 | $38.86 | $58.28 | field work at Avocado Blvd |
| 7/28/2020 | 6:30 AM | 12:00 PM | N/A | Y | 1.00 | 2.00 | N/A | 5.50 | 0.50 | $38.86 | $29.14 | field work at Avocado Blvd |
| 7/30/2020 | 6:45 AM | 3:40 PM | N/A | N/A | N/A | N/A | N/A | 8.42 | 0.42 | $38.86 | $24.28 | in office |
| 8/3/2020 | 6:50 AM | 10:15 AM | N/A | Y | 0.75 | 5.50 | N/A | 3.42 | 1.67 | $38.86 | $97.14 | field work at Fuerte Drive |
| 8/17/2020 | 7:15 AM | 4:00 PM | N/A | N/A | N/A | N/A | N/A | 8.25 | 0.25 | $38.86 | $14.57 | in office |
| 8/18/2020 | 6:50 AM | 3:35 PM | N/A | N/A | N/A | N/A | N/A | 8.25 | 0.25 | $38.86 | $14.57 | in office |
| 8/20/2020 | 6:45 AM / 3:30 PM | 10:00 AM / 5:55 PM | N/A | Y | 1.00 | 4.00 | N/A | 5.67 | 2.67 | $38.86 | $155.42 | Field work at Rios Canyon |
| 8/25/2020 | 6:20 AM | 11:45 AM | N/A | Y | 1.00 | 3.25 | N/A | 5.42 | 1.67 | $38.86 | $97.14 | Field work at Rios Canyon |
| 8/26/2020 | 6:30 AM | 3:32 PM | N/A | N/A | N/A | N/A | N/A | 8.53 | 0.53 | $38.86 | $31.08 | in office |
| 8/28/2020 | 7:03 AM | 4:05 PM | N/A | N/A | N/A | N/A | N/A | 8.53 | 0.53 | $38.86 | $31.08 | in office |
| 8/31/2020 | 6:45 AM | 3:31 PM | N/A | N/A | N/A | N/A | N/A | 8.27 | 0.27 | $38.86 | $15.54 | in office |
| 9/9/2020 | 7:10 AM | 4:30 PM | N/A | N/A | N/A | N/A | N/A | 8.83 | 0.83 | $38.86 | $48.57 | in office |
| 9/11/2020 | 6:45 AM | 3:50 PM | N/A | N/A | N/A | N/A | N/A | 8.58 | 0.58 | $38.86 | $34.00 | in office |
| 9/14/2020 | 6:50 AM | 3:45 PM | N/A | N/A | N/A | N/A | N/A | 8.42 | 0.42 | $38.86 | $24.28 | in office |
| 9/17/2020 | 6:27 AM | 3:35 PM | N/A | N/A | N/A | N/A | N/A | 8.63 | 0.63 | $38.86 | $36.91 | in office |
| 9/18/2020 | 6:35 AM | 3:45 PM | N/A | N/A | N/A | N/A | N/A | 8.67 | 0.67 | $38.86 | $38.86 | in office |
| 9/21/2020 | 6:20 AM | 3:31 PM | N/A | N/A | N/A | N/A | N/A | 8.68 | 0.68 | $38.86 | $39.83 | in office |
| 9/29/2020 | 6:45 AM | 3:35 PM | N/A | N/A | N/A | N/A | N/A | 8.33 | 0.33 | $38.86 | $19.43 | in office |
| 9/30/2020 | 7:00 AM | 5:45 PM | N/A | N/A | N/A | N/A | N/A | 10.25 | 2.25 | $38.86 | $131.14 | in office |
| 10/1/2020 | 7:20 AM | 5:15 PM | N/A | N/A | N/A | N/A | N/A | 9.42 | 1.42 | $38.86 | $82.57 | in office |
| 10/2/2020 | 7:15 AM | 4:02 PM | N/A | N/A | N/A | N/A | N/A | 8.28 | 0.28 | $38.86 | $16.51 | in office |
| 10/5/2020 | 6:30 AM | 3:35 PM | N/A | N/A | N/A | N/A | N/A | 8.58 | 0.58 | $38.86 | $34.00 | in office |
| 10/9/2020 | 7:10 AM | 4:01 PM | N/A | N/A | N/A | N/A | N/A | 8.35 | 0.35 | $38.86 | $20.40 | in office |
| 10/13/2020 | 7:15 AM | 4:30 PM | N/A | N/A | N/A | N/A | N/A | 8.75 | 0.75 | $38.86 | $43.71 | in office |
| 10/14/2020 | 6:58 AM | 3:57 PM | N/A | N/A | N/A | N/A | N/A | 8.48 | 0.48 | $38.86 | $28.17 | in office |
| 10/16/2020 | 7:10 AM | 4:15 PM | N/A | N/A | N/A | N/A | N/A | 8.58 | 0.58 | $38.86 | $34.00 | in office |
| 10/20/2020 | 6:31 AM | 3:32 PM | N/A | N/A | N/A | N/A | N/A | 8.52 | 0.52 | $38.86 | $30.11 | in office |
| 10/22/2020 | 7:10 AM | 4:01 PM | N/A | N/A | N/A | N/A | N/A | 8.35 | 0.35 | $38.86 | $20.40 | in office |
| 10/26/2020 | 7:15 AM | 4:34 PM | N/A | N/A | N/A | N/A | N/A | 8.82 | 0.82 | $38.86 | $47.60 | in office |
| 11/2/2020 | 6:35 AM | 3:40 PM | N/A | N/A | N/A | N/A | N/A | 8.58 | 0.58 | $38.86 | $34.00 | in office |
| 11/5/2020 | 7:05 AM | 8:30 AM | N/A | Y | 1.00 | 7.00 | N/A | 1.42 | 1.42 | $38.86 | $82.57 | Field work at Oleander Ave |
| 11/9/2020 | 7:09 AM | 6:10 PM | N/A | N/A | N/A | N/A | N/A | 10.52 | 2.52 | $38.86 | $146.68 | in office |
| 11/10/2020 | 7:16 AM | 5:15 PM | N/A | N/A | N/A | N/A | N/A | 9.48 | 1.48 | $38.86 | $86.45 | in office |

**TABLE 7 – ET-III Zarattini**

Employee Name: Andrea Zarattini
Classification: Engineering Technician III
Employee Schedule: 7:00 am to 3:30 pm (30 minutes lunch)

| Date | Office Sign-in sheets | | time email was sent to CE Monzon | Field? | Driving hours to and from field | Hours at the field | Estimated tele-working hours * | Hours in the office | hours over 8 per day | HOURLY RATE (estimated) | OVERTIME | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | In | Out | | | | | | | | | | |
| 11/13/2020 | 6:55 AM | 3:50 PM | N/A | N/A | N/A | N/A | N/A | 8.42 | 0.42 | $38.86 | $24.28 | in office |
| 11/18/2020 | 6:29 AM | 3:40 PM | N/A | N/A | N/A | N/A | N/A | 8.68 | 0.68 | $38.86 | $39.83 | in office |
| 11/19/2020 | 6:38 AM | 3:46 PM | N/A | N/A | N/A | N/A | N/A | 8.63 | 0.63 | $38.86 | $36.91 | in office |
| 12/8/2020 | 6:50 AM | 3:56 PM | N/A | N/A | N/A | N/A | N/A | 8.60 | 0.60 | $38.86 | $34.97 | in office |
| 12/10/2020 | 7:15 AM | 4:10 PM | N/A | N/A | N/A | N/A | N/A | 8.42 | 0.42 | $38.86 | $24.28 | in office |
| 1/8/2021 | 1:00 PM | 5:30 PM | N/A | Y | 1.00 | 4.50 | N/A | 4.50 | 2.00 | $38.86 | $116.57 | Field work at Bonita and Spring Valley |
| 1/11/2021 | 7:40 AM | 8:35 AM | N/A | Y | 1.00 | 6.42 | N/A | 0.92 | 0.33 | $38.86 | $19.43 | Field work at Bonita and Spring Valley |
| 1/15/2021 | 6:35 AM | 7:25 AM | N/A | Y | 1.00 | 6.92 | N/A | 0.83 | 0.75 | $38.86 | $43.71 | Field work in Spring Valley |
| 1/28/2021 | 6:55 AM | 7:55 AM | N/A | Y | 1.00 | 6.58 | N/A | 1.00 | 0.58 | $38.86 | $34.00 | Field work at Bonita and Spring Valley |
| 1/29/2021 | 7:25 AM | 4:38 PM | N/A | N | N | N | N | 8.72 | 0.72 | $38.86 | $41.77 | weather - no field work |
| 2/22/2021 | 7:15 AM | 11:35 AM | N/A | Y | 1.25 | 2.88 | N/A | 4.33 | 0.46 | $38.86 | $26.72 | Field work in Alpine |
| 2/25/2021 | 6:25 AM | N/A | N/A | Y | 1.25 | 7.33 | N/A | N/A | 0.58 | $38.86 | $34.00 | Field work in Alpine |
| 3/1/2021 | 7:17 AM / 4:45 PM | 8:30 AM / 9:42 PM | N/A | Y | 0.75 | 7.00 | N/A | 6.17 | 5.92 | $38.86 | $344.84 | Field work in Casa de Oro |
| 3/3/2021 | 9:10 AM | 3:50 PM | N/A | Y | 0.75 | 1.79 | N/A | 6.17 | 0.71 | $38.86 | $41.28 | Inspection at Conrad Dr |
| 3/15/2021 | 7:05 AM | 4:05 PM | N/A | N/A | N/A | N/A | N/A | 8.50 | 0.50 | $38.86 | $29.14 | in office |
| 5/4/2021 | 7:15 AM | 5:01 PM | N/A | N | N/A | N/A | N/A | 9.27 | 1.27 | $38.86 | $73.83 | in office |
| 5/27/2021 | 7:02 AM | 3:51 PM | N/A | N/A | N/A | N/A | N/A | 8.32 | 0.32 | $38.86 | $18.46 | in office |
| 5/28/2021 | 7:16 AM | 4:03 PM | N/A | N/A | N/A | N/A | N/A | 8.28 | 0.28 | $38.86 | $16.51 | in office |
| 6/2/2021 | 6:50 AM | 3:50 PM | N/A | N/A | N/A | N/A | N/A | 8.50 | 0.50 | $38.86 | $29.14 | in office |
| 6/4/2021 | 6:58 AM | 7:18 AM | N/A | Y | 1.50 | 7.42 | N/A | 0.33 | 1.25 | $38.86 | $72.85 | Field work at Spangler Peak Rd |
| 6/8/2021 | 6:44 AM | 3:59 PM | N/A | N/A | N/A | N/A | N/A | 8.75 | 0.75 | $38.86 | $43.71 | in office |
| 6/9/2021 | 7:02 AM | 4:03 PM | N/A | N/A | N/A | N/A | N/A | 8.52 | 0.52 | $38.86 | $30.11 | in office |
| 6/11/2021 | 7:14 AM | 4:11 PM | N/A | N/A | N/A | N/A | N/A | 8.45 | 0.45 | $38.86 | $26.23 | in office |
| 6/16/2021 | 7:09 AM | 4:03 PM | N/A | N/A | N/A | N/A | N/A | 8.40 | 0.40 | $38.86 | $23.31 | in office |
| 6/22/2021 | 7:02 AM | 3:52 PM | N/A | N/A | N/A | N/A | N/A | 8.33 | 0.33 | $38.86 | $19.43 | in office |
| 6/23/2021 | 7:00 AM | 3:50 PM | N/A | N/A | N/A | N/A | N/A | 8.33 | 0.33 | $38.86 | $19.43 | in office |
| 6/30/2021 | 7:19 AM | 5:45 PM | N/A | N/A | N/A | N/A | N/A | 9.93 | 1.93 | $38.86 | $112.68 | in office |
| 7/1/2021 | 7:07 AM | 4:01 PM | N/A | N/A | N/A | N/A | N/A | 8.40 | 0.40 | $38.86 | $23.31 | in office |
| 7/2/2021 | 7:07 AM | 5:25 PM | N/A | N/A | N/A | N/A | N/A | 9.80 | 1.80 | $38.86 | $104.91 | in office |
| 7/6/2021 | 7:08 AM | 4:04 PM | N/A | N/A | N/A | N/A | N/A | 8.43 | 0.43 | $38.86 | $25.26 | in office |
| 7/8/2021 | 6:55 AM | 3:50 PM | N/A | N/A | N/A | N/A | N/A | 8.42 | 0.42 | $38.86 | $24.29 | in office |
| 7/22/2021 | 7:11 AM | N/A | N/A | Y | 1.00 | 7.82 | N/A | N/A | 0.82 | $38.86 | $47.60 | Field work in Spring Valley |
| 7/26/2021 | 1:32 PM | 4:12 PM | N/A | Y | 1.00 | 5.03 | N/A | 2.67 | 0.70 | $38.86 | $40.80 | field work for ADA Ramps at Parkbrook St |
| 7/27/2021 | 6:46 AM | 3:52 PM | N/A | N/A | N/A | N/A | N/A | 8.60 | 0.60 | $38.86 | $34.97 | in office |
| 8/3/2021 | 6:44 AM | 10:12 AM | N/A | Y | 1.00 | 4.30 | N/A | 3.47 | 0.77 | $38.86 | $44.69 | field work ADA Ramps at Cornwell and Dorchester |
| 8/23/2021 | 7:05 AM | 8:32 AM | N/A | Y | 1.00 | 5.97 | N/A | 1.45 | 0.42 | $38.86 | $24.28 | Field ADA Ramps at Ivy Street and Eleta Pl |
| 9/7/2021 | 6:19 AM | 10:08 AM | N/A | Y | 1.00 | 4.37 | N/A | 3.82 | 1.18 | $38.86 | $68.97 | Field work at Calle Trucksess |

## TABLE 7 - ET-III Zarattini

Employee Name: Andrea Zarattini
Classification: Engineering Technician III
Employee Schedule: 7:00 am to 3:30 pm (30 minutes lunch)

| Date | Office Sign-in sheets | | time email was sent to CE Monzon | Field? | Driving hours to and from field | Hours at the field | Estimated tele-working hours * | Hours in the office | hours over 8 per day | HOURLY RATE (estimated) | OVERTIME | Comments |
|------|------|------|------|------|------|------|------|------|------|------|------|------|
|  | In | Out |  |  |  |  |  |  |  |  |  |  |
| 10/12/2021 | 7:21 AM | 4:50 PM | N/A | N/A | N/A | N/A | N/A | 8.98 | 0.98 | $38.86 | $57.32 | in office |
| 10/13/2021 | 7:02 AM | 3:51 PM | N/A | N/A | N/A | N/A | N/A | 8.32 | 0.32 | $38.86 | $18.46 | in office |
| 10/14/2021 | 6:50 AM | 4:15 PM | N/A | N/A | N/A | N/A | N/A | 8.92 | 0.92 | $38.86 | $53.43 | in office |
| 10/15/2021 | 7:04 AM | 4:02 PM | N/A | N/A | N/A | N/A | N/A | 8.47 | 0.47 | $38.86 | $27.20 | in office |
| 10/18/2021 | 6:31 AM | 3:22 PM | N/A | N/A | N/A | N/A | N/A | 8.35 | 0.35 | $38.86 | $20.40 | in office |
| 10/25/2021 | 6:28 AM | 4:12 PM | N/A | N/A | N/A | N/A | N/A | 9.23 | 1.23 | $38.86 | $71.89 | in office |
| 10/27/2021 | 7:05 AM | 5:10 PM | N/A | N/A | N/A | N/A | N/A | 9.58 | 1.58 | $38.86 | $92.28 | in office |
| 10/29/2021 | 6:59 AM | 3:55 PM | N/A | N/A | N/A | N/A | N/A | 8.43 | 0.43 | $38.86 | $25.26 | in office |
| 11/3/2021 | 6:46 AM | 3:57 PM | N/A | N/A | N/A | N/A | N/A | 8.68 | 0.68 | $38.86 | $39.83 | in office |
| 11/4/2021 | 7:00 AM | 3:45 PM | N/A | N/A | N/A | N/A | N/A | 8.25 | 0.25 | $38.86 | $14.57 | in office |
| 11/17/2021 | 6:45 AM | 3:40 PM | N/A | N/A | N/A | N/A | N/A | 8.42 | 0.42 | $38.86 | $24.23 | in office |
| 11/23/2021 | 7:06 AM | 4:42 PM | N/A | N/A | N/A | N/A | N/A | 9.10 | 1.10 | $38.86 | $64.11 | in office |
| 12/1/2021 | 6:29 AM | 4:25 PM | N/A | N/A | N/A | N/A | N/A | 9.43 | 1.43 | $38.86 | $83.55 | in office |
| 12/14/2021 | 7:02 AM | 8:05 PM | N/A | N/A | N/A | N/A | N/A | 12.55 | 4.55 | $38.86 | $265.19 | in office |
| 4/11/2022 | 6:59 AM | 7:35 AM | N/A | Y | 2.00 | 6.42 | N/A | 0.60 | 1.02 | $38.86 | $59.26 | Field work in Fallbrook |
| 4/19/2022 | 7:00 AM | 7:35 AM | N/A | Y | 2.00 | 4.42 | N/A | 2.50 | 0.92 | $38.86 | $53.43 | Field work in Fallbrook |
|  | 2:00 PM | 3:55 PM |  |  |  |  |  |  |  |  |  |  |
| 4/27/2022 | 6:40 AM | 3:35 PM | N/A | N/A | N/A | N/A | N/A | 8.42 | 0.42 | $38.86 | $24.29 | in office |
| 6/1/2022 | 7:20 AM | 10:40 AM | N/A | Y | 2.00 | 3.33 | N/A | 3.33 | 0.67 | $38.86 | $38.86 | Field work in Fallbrook |

\* Based on time and content of email sent to CE Monzon

total OT:    80.68 hours          Estimated OT earnings:  $3,134.95



USPS TRACKING #

9590 9402 7543 2098 5975 06

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States**
**Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

Harin Law Group
12526 High Bluff Drive Suite 300

San Diego, CA 92130

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Office of County Counsel
Claims and Investigation Div.
1600 Pacific Highway, Room 355
San Diego, CA 92101

9590 9402 7543 2098 5975 06

2. Article Number (Transfer from service label)

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
REX Neil   04/29/23

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053      Domestic Return Receipt

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
**Domestic Mail Only**

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee
$ $4.15

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)        $
☐ Return Receipt (electronic)       $
☐ Certified Mail Restricted Delivery  $
☐ Adult Signature Required          $
☐ Adult Signature Restricted Delivery $

Postage
$ $2.22

Total Postage and Fees
$ $4.72

Postmark
Here

Sent To *Office of Country Counsel - Claims Div.*
Street and Apt. No., or PO Box No. *1600 Pacific Highway, Room 355*
City, State, ZIP+4® *SD, CA 92101*

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

7022 0410 0003 2525 7671

EXHIBIT C



# County of San Diego

## OFFICE OF COUNTY COUNSEL
### CLAIMS AND INVESTIGATION DIVISION
#### 1600 PACIFIC HIGHWAY, ROOM 355, SAN DIEGO, CALIFORNIA 92101-2469

July 26, 2023

Karen Monzon
c/o Hariri Law Group
12526 High Bluff Dr., Ste. 300
San Diego, CA 92130

Re: Client/Claimant: KAREN MONZON
County File Number: 230222
Date of Incident: Unknown

SUBJECT: **NOTICE OF REJECTION OF CLAIM**
(Following Prior Notice of Claim Insufficiency and Failure to Cure)

Your claim, which was filed some time ago against the County of San Diego, was referred to this office for investigation, and, with the advice of the Office of County Counsel, a determination of legal liability.

As you may know, the liability of a municipality to persons who claim damages is strictly limited by the acts of the legislature of the State of California governing municipal operations.

This office advised you on April 17, 2023, that your claim was insufficient and failed to meet the requirements of Government Code Section 910. Such notice of insufficiency was mailed to you in compliance with Government Code Section 910.8. You have failed to date to file an amended claim and, therefore, no valid claim has been filed against the County of San Diego.

Should a court determine your previously filed claim to be sufficient, please be informed that due to the County's investigation and legal opinion, said claim cannot be honored, and because no formal denial has been issued by the County of San Diego within the 45-day time period prescribed by Government Code Section 912.4, your claim is deemed denied by operation of law.

In issuing this denial, the County of San Diego is not waiving any defense as to the insufficiency of your claim. See Government Code Section 911.

### WARNING

Subject to certain exceptions, you have only six (6) months from the date this notice

July 26, 2023

was personally delivered or deposited in the mail to file a court action on those causes of action recognized under the Government Claims Act.  See Government Code Section 945.6.

You may seek the advice of an attorney of your choice in connection with this matter.  If you desire to consult an attorney, you should do so immediately.

Sincerely,

Office of County Counsel
Claims and Investigation Division
(619) 531-4899